## LAMB v. THE B., C. R. & M. R. Co.

1. **Townships:** DIVISION OF: TAXATION. The organization of a township, created by the division of the territory of another, is not complete until its officers have been elected and enter upon the discharge of their duties. Until that time it remains a part of the original township and is subject to the payment of taxes legally levied therein.

2. ———: RECORD IN ANOTHER CASE: INJUNCTION. The use of a part of the record of another cause between other parties, implies the right to introduce all the parts, and it will be taken as a whole. If one bases a claim upon the alleged violation of an injunction in another action, he will be equally affected by all orders therein made respecting the injunction.

3. **Jurisdiction:** ELECTION: INJUNCTION. Whether a court has power or jurisdiction to enjoin an election held pursuant to a public law, *quære.*

4. **Estoppel:** TAXATION. That a tax to aid in the construction of a railroad was voted in January, 1872, and the railroad completed upon the faith of the tax within the year, while the tax-payers remained silent until all the benefits to accrue therefrom were secured, would estop them from denying the validity of the tax. Following *The B., C. R. & M. R. Co. v. Stewart,* p. 267, *ante.*

5. **Practice:** INJUNCTION. To justify the reversal of an order, granting or refusing a preliminary injunction, requires a stronger case than would have justified an original order of opposite effect to the one made.

*Appeal from Linn District Court.*

FRIDAY, SEPTEMBER 25.

THIS is a suit in equity to obtain an injunction against the collection of a tax, voted in aid of The B., C. R. & M. R. Co. The railroad company and the treasurer of the county are made

defendants. The action was commenced March 17, 1873, and in his petition the plaintiff avers that he is a resident and taxpayer of Grant township in Linn county, which township adjoins Washington township in said county; that on January 24, 1872, a pretended tax of five per cent. was voted in aid of the construction of said railroad through said township, and unless enjoined the treasurer will collect the same. That previous to said pretended election, and on January 9, 1872, the Board of Supervisors of said county set off from the territory of Washington, what is now known as Grant township, in which plaintiff resides; that plaintiff and others residing in such new township did not vote at said election. That on the morning of such election, an injunction was served upon the judges and clerks of the election, enjoining them from holding said election, and on account thereof plaintiff did not vote, being advised that he had no legal right to. That said railroad company have not done two-thirds of the work as provided by law, so as to entitle them to the tax, and said road is not built through said Grant township. That the taxes assessed amount to ten thousand dollars; that plaintiff has no adequate remedy at law, and has had no voice in said election. He asks a temporary injunction against the collection of the railroad tax, and that it may be made perpetual. On this petition and the affidavit of four others to facts substantially the same, the plaintiff applied to the District Court for an order for the writ of injunction.

The defendants resisted the application, and filed an answer in which it is admitted that the election was held as stated; that the order for the organization of the new township was made as stated. And it is averred that the election for the organization of the new township was fixed for the first Tuesday in November, 1872, and that the township of Grant was not fully organized till January 1, 1873, up to which time it remained a part of Washington township, for every purpose. That a majority of all the legal voters, being seventy-one, who resided within the territory set apart to Grant township, did vote at said election, and a large portion signed the petition for it; that a large majority of all the voters in Washington

township entire, to-wit, 194 out of 231, voted for said tax. That it is true, in a case of E. H. Downs *et al. v.* William Nevin *et al.*, an injunction was issued, under the order of the Circuit Judge in vacation, and was served on the trustees of the township enjoining the election; but at the March term, 1872, of the District Court, the injunction was dissolved, the plaintiffs' petition was dismissed and the whole subject matter was adjudicated, whereby this plaintiff is estopped from maintaining this action. It is denied that two-thirds of the work had to be done before the railroad company would be entitled to the tax, or that the amount of the tax is as stated. And it is averred that all the tax in Washington township, including the territory of Grant, amounts to $17,477.15, and that the railroad company has expended in said township the sum of $65,882.67, and the cars are running to the village of Center Point in said township; that all the grading is completed and ready for the iron through said Grant township; the station located and depot built in the center of said Grant township, and all the conditions of the vote were complied with prior to January 1, 1873. That after the railroad had been completed, the estimates were duly filed and the proper certificate entitling the railroad company to the tax was issued, and the notice to the tax payers duly given. That the plaintiff, well knowing that the railroad company were expending money and building the road on the faith of the tax voted, stood by and remained silent for fourteen months, and until the road was completed, and is thereby estopped from denying the validity of the tax.

The defendants then set out the pleadings in the case of Downs *et al.* for themselves and others too numerous to set out by name *v.* Wm. Nevin *et al.*, trustees, in which the injunction of the election was obtained, showing that the issues were as to when Grant township became a separate organization, and as to the validity of the election. And also set out the proceedings had in March, 1872, for contempt in the alleged violation of the injunction, the same being entitled, The State of Iowa *v.* William Nevin *et al.*, for contempt in

holding the election. The final order shows that they were discharged and found not guilty of contempt.

Upon the hearing of the application for the injunction, on the pleadings, affidavits, records and exhibits, the District Court refused to grant the injunction, and the plaintiff duly excepted and appeals.

*Thos. Corbett* and *Thompson & Davis*, for appellant.

*A. S. Belt*, for appellee.

COLE, J.—I. It appears that the petition for the vote to aid in constructing the railroad, was presented to the township trustees of Washington township, and the vote ordered prior to the 9th day of January, 1872, when the order was made by the Board of Supervisors respecting the division of said township by erecting Grant township out of a part of its territory. This act did not operate to make an independent township of that territory, but it remained a part of Washington, until its complete organization, which did not, and under .the law. could not, be effected prior to January 1, 1873, when the officers elected for it, etc., entered upon the discharge of their duties. So far as respects the division of the township, then, there was nothing to affect the validity of the tax complained of.

II. The appellant's counsel claim that the election was illegal and void, because it was held in violation of an injunction. It may perhaps be conceded as a general rule, that whatever is done by the parties in the action contrary to an injunction duly issued in it, and served, will be held in that action as not done. The rule may be even broader than this statement of it. But with its exact extent we have here no occasion to inquire further. In the action wherein the injunction was granted, the question of the validity of the injunction, whether it had been violated, and the effect of the vote had, notwithstanding it, were all adjudicated adversely to the claim now made by the plaintiff. That is, the court must have found in that case, in order to support its conclusions, that the injunction was illegal or improper, that it had not been violated, and that it did not have the effect to render the vote for

the tax invalid. But it may be urged that this plaintiff was not a party to that action, and hence not bound by the adjudications in it. That action, however, was brought in the name of Downs and others for themselves and all others interested like them, and who were too numerous to be made parties, and whether this plaintiff was a party, by name, does not appear. But waiving that, if the injunction which the plaintiff now sets up, was held, in that particular case wherein it was granted, not to effect the vote, and that it was not violated by holding the election, how can this plaintiff make such injunction available to himself here, without also being bound by the record disposition made of the injunction? If he is not technically estopped by the adjudication, he is clearly bound to take the injunction with all its adjuncts—if he would use a part of the record of a cause, *inter alia*, he must do so with the right in the other party to introduce the other parts, and the court will take it as a whole. When the record is thus all taken together, it affords no support to plaintiffs' case.

And further than this, without undertaking to decide the question, we simply state that we should hesitate long before adjudging that any court has the power or jurisdiction to enjoin an election to be held by the people pursuant to a public law. If such an injunction would bind the officers of an election upon whom it is served, it would bind, also, any others who might undertake to hold the election in their places, upon their declining to act, and would also doubtless bind the electors, all of whom would necessarily have knowledge of it. The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time and in the manner provided by statute, may well be doubted. If the election, when held, was not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But that is quite another thing from enjoining the people from peaceably assembling and casting their votes for or against any proposition submitted to them under the color of law. If the injunction was issued without any jurisdiction to issue it, of course it would have no binding

effect whatever. But this we do not determine, since the ground previously considered is quite sufficient to sustain the action of the District Court upon this point.

III. There is still a further ground upon which the action of the District Court may be sustained and affirmed. It is this: The tax was voted in January, 1872; the work of constructing the railroad on the faith of the tax was completed within the year. The plaintiff remained silent until all the benefits which would accrue to him were secured, and then, fourteen months after the vote, he seeks to enjoin the collection of the tax, and thereby relieve himself from the payment of that, upon the faith of which he knew the work was being done. These facts work an equitable estoppel, as we have before held. *The B., C. R. & M. R. Co. v. Stewart*, p. 267, *ante*, and authorities there cited.

It may be proper to add the further thought that, to a certain extent, the granting or refusing a preliminary injunction is a matter of sound judicial discretion; and a stronger case must be made to justify the reversal of an order, than might justify the original making of it the other way. The learned district judge who decided the previous case of *Downs et al. v. Nevin et al.*, more or less involved in this, and who has a familiarity with the entire case, in the exercise of his discretion, saw fit to refuse the injunction in this case. We see no sufficient reason for interfering with his order.

AFFIRMED.