THEODORE MEISTRELL *et al.* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ELLIS.

No. 15,145. (91 Pac. 65.)

SYLLABUS BY THE COURT.

1. INJUNCTION—*Parties—Taxpayers.* Taxpayers who bring a suit under chapter 334 of the Laws of 1905 to enjoin a board of county commissioners from carrying out a contract for the building of a bridge and appropriating money to pay for the same do not sue in behalf of the public, or in any representative capacity, but only for the protection of their own interests.

2. ——— *Estoppel—Inequitable Conduct of Plaintiffs.* The rule that equity will not aid those who have been guilty of inequitable conduct in the matter presented as a basis for equitable relief applies to such taxpayers the same as to ordinary suitors.

3. ——— *Payment for a Bridge—Irregularities in Letting Contract—Laches of Plaintiffs.* It would be inequitable to allow such taxpayers, who had a knowledge of the letting of the contract and who stood silently by for months until the greater part of the work was done and the contractor had incurred great expense, to enjoin the board of county commis-

sioners from paying for the bridge when complete because of irregularities in the letting of the contract and a defective exercise of authority conferred by law upon such board.

Error from Ellis district court; JAMES H. REEDER, judge. Opinion filed July 5, 1907. Affirmed.

*W. E. Saum,* and *A. D. Gilkeson,* for plaintiffs in error.

*J. P. Shutts,* county attorney, and *C. E. Gault,* for defendant in error; *D. R. Hite,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a suit to enjoin the commissioners of Ellis county from carrying out a contract for the building of a bridge or the appropriation of public money to pay for the bridge.

On November 4, 1905, the commissioners determined to build a bridge over the Saline river, and advertised for bids for its construction, specifying that it should be a "stone or cement bridge with a span or arch forty-eight feet, to be fourteen feet above low-water level, with a sixteen-foot roadway, iron guard-rails, with one seventy-foot wing and one fifty-foot wing. Said bridge to be built across the Saline river about fourteen miles north of the city of Hays, Kan."

In response to this notice the Topeka Bridge & Iron Manufacturing Company, among others, made a bid for the construction of the bridge. It proposed to build a cement, concrete bridge, reinforced with iron and steel, at a specified price. The proposal was accepted by the board, and on December 19, 1905, it entered into a contract with the bridge company by which the latter was to construct the bridge for $1995. The bridge company began at once to make the iron and steel portions of the bridge, and had completed and shipped the same to Ellis county in June, 1906. About the same time it shipped the cement and other necessary materials and began the construction of the abutments and piers of the bridge.

On February 5, 1906, an order was made providing for a notice, and public notice was given of the purpose of the board to appropriate $1995 for the building of the bridge in question.

On June 23, 1906, when the manufacture and construction of the bridge was well advanced, Theodore Meistrell and seven other taxpayers of the county instituted this suit, alleging non-compliance with the statute in the preliminary steps taken by the board toward the building of the bridge and in the awarding of the contract for that purpose, and obtained a restraining order.

On July 18, 1906, upon a trial had, the temporary injunction asked for was denied. While the court found that the board had not appointed a commissioner to determine the cost of the bridge in advance, and also that no plans or specifications for the bridge were on file in the office of the county clerk thirty days prior to the awarding of the contract, as the statute required, and that the bridge contracted for was not strictly of the kind described in the notice inviting bids, it held that the laches of the plaintiffs in remaining inactive for so long a time and allowing large expenditures of money to be made in carrying out the contract disentitled them to the equitable relief which they asked.

The ruling of the court will not be disturbed. The ground of the relief asked by plaintiffs is based not so much upon a want of power to build a bridge as upon informality and irregularity in the exercise of the power. The bridge was necessary, and there was the acknowledged power in the board to build it. The board did not appoint a commissioner to estimate the cost and contract for the building of the bridge, but it will be observed that such an appointment is not required except when the board is not satisfied as to the expense of building the proposed bridge. (Gen. Stat. 1901, § 565.)

The board had inspected other bridges and had

21—76 KAN.

learned about the cost of such structures, but had no definite information as to what the contemplated bridge would cost, and hence the commissioner might well have been appointed. The board had, however, estimated the expense, in a way, to be about $2500, and that estimate appears to have been about as close to the contract price as were the estimates of bidders who were interested in making a careful calculation as to cost.

It is also said that no specifications for the bridge were filed with the county clerk prior to the letting of the contract, but it appears that the notice for bids, given by the board and on file with the county clerk, gave specifications of the proposed bridge with considerable fulness and detail.

Another objection was that the advertisement for proposals to build the bridge called for the construction of a stone or cement bridge, while the one contracted for, as we have seen, was cement reinforced with iron and steel. This was a departure, but not a wide one, for ordinarily steel and iron are used to a considerable extent in cement structures. This bridge is spoken of by witnesses as a cement bridge. The testimony is that it has cement concrete piers and cement concrete abutments, reinforced by iron and steel structures. The floor of the bridge is of cement concrete, constructed on steel beams, and the only exposed steel portions of the bridge are the side trusses above the floor.

Officers are, of course, required to comply with mandatory provisions of the statute, but it is plausibly argued by the defendant that there has been substantial compliance with the mandatory provisions and that mere irregularities and informalities in the methods employed should not defeat the completion of public improvements. Under the circumstances of this case the plaintiffs were hardly in a position to invoke the equitable jurisdiction of the court and enjoin a public improvement so nearly completed. They appear

in court in the capacity of private suitors for the protection of their personal interests.   They brought the suit under chapter 334 of the Laws of 1905.   Until that act was passed private parties could not interpose a suit of injunction against a proposed improvement until a tax or charge had been placed against them or their property and was about to be enforced.   The act named expanded the remedy of injunction, and gives the taxpayer a right of action against a public officer or board to enjoin them from entering into any contract or doing any unauthorized act that might result ultimately in the creation of a burden or the levying of a tax against his property.   He does not, however, sue in behalf of the state or in any representative capacity. As was said in *Gas Co. v. Railway Co.*, 74 Kan. 661, 87 Pac. 883:

"The statute gives the right of action at the inception of any attempt to create such illegal burden.   The plaintiff is not suing on behalf of the public or in the public's interest, but in its own name, for the protection of its own property.   A judgment in its favor may result in relieving all the property in the city from paying taxes to liquidate the indebtedness which the city is trying to create, but that would be only an incident in the protection of its own property and not a reason why it should not be permitted to maintain an action at this time."    (Page 665.)

As the plaintiffs were suing for themselves only, and for the protection of their own interests, they are to be governed and their rights measured by the ordinary rules applicable to private suitors.

The plaintiffs came into a court of equity asking a permanent injunction against the payment of the contractor for work which had been in progress for months, upon which a large amount of money had been expended, and when the contractor was not even a party to the action.   Assuming that originally they had a right to interpose and enjoin, it has been forfeited by their silence and delay.   The contract was let and the work was in progress for about six months be-

fore they made any complaint or took any steps to assert their rights. With a knowledge that the contract had been made, and that the bridge was being built, they stood silently by and suffered the contractor to make a special bridge to fit that crossing and to incur expenses and liabilities of a burdensome character. To allow them to enjoin a public improvement which would so seriously affect others after such inaction and delay would be grossly inequitable. As was said in *Commissioners of Morris Co. v. Hinchman,* 31 Kan. 729, 3 Pac. 509: "It is a well-established rule in equity that if a party is guilty of laches or unreasonable delay in the enforcement of his rights he thereby forfeits his claim to equitable relief." (Page 736.)

The case of *Brown v. Merrick County,* 18 Neb. 355, 25 N. W. 356, is a case where certain taxpayers sought to enjoin the county commissioners from paying for the construction of a public bridge. It was contended that the board had failed to comply with the law in several particulars, but there was no charge of bad faith against the board or of fraud in contracting for the building of the bridge, and it was said that so long as the board acted within its authority no injunction would lie to restrain it; that "a taxpayer who seeks to enjoin the payment of money for the erection of a public bridge which he claims is being constructed in violation of law, must act with reasonable promptness. If he is guilty of gross laches, and knowingly permits the contractor to incur liabilities in good faith in the construction of the greater portion of the work, an injunction will be denied." (Syllabus. See, also, *Sleeper, v. Bullen & Dustin, et al.,* 6 Kan. 300; *H. & S. Rld. Co. v. Comm'rs of Kingman Co.,* 48 Kan. 70, 28 Pac. 1078, 15 L. R. A. 401, 30 Am. St. Rep. 273; *Tasch & others v. Adams, Treasurer,* 64 Mass. 252; *Kellogg v. Ely,* 15 Ohio St. 64; *Lamb v. The B., C. R. & M. R. Co.,* 39 Iowa, 333.)

The bridge was necessary for the convenience of the people. No fraud is charged against the board in the

letting of the contract. The board had power to build the kind of a bridge that was contracted for, and there is no claim that it is not worth the contract price. The case is unlike those cited by plaintiffs where the commissioners were wholly without authority to act. Here there was power, but it was defectively exercised. The delay of the plaintiffs in challenging the proceedings was unreasonable, and the court rightly held that they were not entitled to the equitable relief sought.

The judgment is affirmed.