THOMAS T. KELLY, *Appellee,* V. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MIAMI, *Appellant.*

No. 16,996.

SYLLABUS BY THE COURT.

COMPROMISE AND SETTLEMENT—*Payment of Disputed Claim— Repudiation—Grounds of Recovery.* A candidate for a state office was charged with misconduct as a county officer some years before. He asked the county commissioners to investigate the question whether he was indebted to the county, and if so in what sum, and agreed to accept their finding, at the same time depositing a sum to cover any amount for which he might be found liable. The commissioners made an investigation, reported that he was indebted to the county in excess of the deposit, and demanded that he pay the difference. He did so because of his agreement. In an action brought by him to recover the full amount paid, *held:* (1) That the payment of the balance claimed was in effect a payment of the whole amount, and having been made in response to a demand based upon a claim of right could be recovered only upon proof of

mistake of fact, fraud, or duress; (2) that neither fraud nor mistake of fact was shown, and whatever duress existed was in consequence of the plaintiff's candidacy, and ceased with the election; and even if originally an action might have been brought for a recovery of the money, it was incumbent upon the plaintiff to disaffirm the payment with reasonable promptness, and the limit of a voluntary delay may be fixed at two years, by analogy with the statute requiring claims against a county to be presented within that period; (3) that whatever right of action the plaintiff had was based upon the county's implied contract to restore the money, and the three-year statute of limitation applied to it.

Appeal from Leavenworth district court. Opinion filed June 10, 1911. Reversed.

### STATEMENT.

IN the opinion, for the sake of brevity and clearness, the effect is stated of several documents and matters of record which are not set out in full, nor quoted from with literal exactness. In order that the statements may be complete, their precise language is here given:

The original offer made by the plaintiff to the commissioners:

"Whereas, it is persistently charged, to the great injury of the undersigned, Thomas T. Kelly, who is a candidate for the nomination for state treasurer, that while the said Thomas T. Kelly was county clerk of Miami county, Kansas, irregularities occurred that occasioned loss of money to said county. Now, on this 11th day of April, A. D. 1902, personally appeared before the said board of county commissioners of said county the said Thomas T. Kelly, and requests that said board make an investigation as to the condition of his accounts as such county clerk and determine whether or not he is indebted to said county, and if so in what amount; and he, the said Thomas T. Kelly, hereby agrees to accept the findings of said board as to said amount, if any, and as a guarantee of his good faith does hereby deposit with said board the sum of $1000, out of which sum the board is to retain for said county the amount, if any, may be found to be due to said county from said Thomas T. Kelly, all questions re-

lating to any statute of limitation of the state of Kansas being hereby waived.

"Witness my hand at·Paola, Kan., this 11th day of April, 1902.                              T. T. KELLY."

The order of the board accepting .the offer:

"It is hereby ordered by the board of county commissioners of Miami county, Kansas, that the $1000 this day tendered to the board by Thomas T. Kelly be received to be applied as to per· written statement of the said Thomas T. Kelly therewith submitted and filed.  And it is further ordered that the board make an investigation and examination of the accounts of said Thomas T. Kelly, as county clerk of said county, as requested by said Thomas T. Kelly, and that said board meet to make said investigation on the call of chairman."

The report of the commissioners, made May 15, 1902:

"Whereas, pursuant to said order,. the said board of county commissioners of Miami county, Kansas, met in the city of Paola, on the 4th day of May, 1902, and did, with the assistance of the county clerk and county attorney, make a thorough and careful investigation of all matters pertaining to the office of county clerk of said county, using in said investigation the records of said office, the records of the county treasurer of said county, the records of the banks of said city so far as obtainable, verbal statements when the same could be obtained, and the reports of two experts who have recently examined the records of the office of said county clerk; and after such careful and thorough examination the members of the board of county commissioners of Miami county, Kansas, unanimously find as follows:

"That the irregularities which have occurred during the administration of Thomas T. Kelly, as county clerk of Miami county, Kansas, amount in the aggregate to $1324.99, and that a portion of said irregularities have been caused by said Thomas T. Kelly's lack of experience.  And because of said irregularities the said Thomas T. Kelly is indebted to Miami county, Kansas, in the sum of $1324.99."

The order of the commissioners providing for an

itemized statement supplemental to the report, which they filed June 7, 1902:

"It is hereby ordered that the board proceed to make an itemized statement of the items which together make the sum of $1324.99, which the board found to be due to Miami county on account of the irregularities of Thomas T. Kelly while .acting as county clerk of said county."

The order made July 14, 1902, regarding a further investigation:

"It is hereby ordered by the board of commissioners. of Miami county, Kansas, that the said board proceed to examine the accounts and proceedings of all county officers of said county, beginning October 1, 1888, and from said date to October 1, 1900, and that the result of said examination shall be spread upon the commissioners' journal. Said investigation to begin at such time in August, 1902, as may be hereafter agreed upon."

The introduction and the conclusion of the report filed by the commissioners October 14, 1902:

"January session, 1890. At this session of the board Thomas T. Kelly became county clerk, and the errors and irregularities noted below do not include the errors and irregularities heretofore reported upon by us in a. former investigation. . . . This report of the administration of Thomas T. Kelly as county clerk does. not include the irregularities of his office as shown by us in a former report, whereby he was found to be indebted to and paid back to Miami county the sum of $1324.99."

Testimony of the plaintiff regarding the payment of the $324.99:

"Ques. Then you delivered that draft to Mr. Simpson, to be delivered to the board of county commissioners, in payment of this $324.99 they claimed against you? Ans. Yes, sir.

"Q. Delivered it for that purpose? A. Yes, sir.

"Q. And to make payment of that sum? A. Yes, sir.

"Q. Why did you pay that $324.99? A. I had agreed to pay it—under the contract."

*Thomas H. Kingsley,* and *J. D. Snoddy,* for the appellant.

*L. S. Harvey, A. E. Dempsey,* and *Charles Blood Smith,* for the appellee.

The opinion of the court was delivered by

MASON, J.: In 1902 Thomas T. Kelly was a candidate for state treasurer. Charges were made that he had been guilty of misconduct while county clerk from 1890 to 1894, which had resulted in losses to the county. On February 15, 1902, the board of county commissioners made an investigation of the matter, and filed a report in effect sustaining the charges against him. On April 11, 1902, he presented to the board a written proposal, asking them to make an investigation and determine whether he was indebted to the county, and if so in what amount, and agreeing to accept their findings. At the same time he deposited $1000 with them to cover any amount for which they might find him liable. The commissioners accepted the proposal, made an investigation, and prepared a written report to the effect that he was indebted to the county in the sum of $1324.99, which they filed on May 15, 1902. On that day they notified him of the finding and requested him to pay the balance of $324.99. On July 7, 1902, he paid that amount. On July 8, 1907, he began action against the county to recover the $1324.99. A referee reported in his favor and a judgment was rendered accordingly, from which the county appeals.

The report of the referee is for the most part devoted to the question whether the plaintiff had in fact been indebted to the county. It includes a finding that the evidence "does not show the wrongful payment of any sum to plaintiff and does not show that he ever at any time obtained any money unlawfully from the county." This finding is complained of, but it was made by the referee upon a mass of evidence, a part

of which was oral, and having been approved by the trial court is not open to review here. Complaint is also made of the rejection of certain evidence, but it is at least doubtful whether a sufficient foundation was laid to make that ruling reviewable. The present inquiry is therefore limited to the question whether, irrespective of the merits of the original controversy, the plaintiff could maintain his action. The defendant asserts: (1) That if the commissioners' acceptance of the plaintiff's offer constituted a valid contract, their finding was conclusive, unless they acted in bad faith, which was not the case; (2) that the amount sued for was paid voluntarily, and therefore can not be recovered; and (3) that the claim is barred by the failure to present it to the county board for allowance within two years (Gen. Stat. 1868, ch. 25, § 47, Gen. Stat. 1909, § 2123) and by the three-year statute of limitations (Civ. Code, § 17, subdiv. 2).

If the proposal made to the commissioners and accepted and acted upon by them amounted to a contract for the settlement of the controversy, their decision, if made in good faith, was final and binding. The fact that the investigators were representatives of one of the parties would not affect the matter. An officer of a municipality is often made the arbitrator of its disputes with its contractors, and his decisions are as conclusive as though he were disinterested. (23 L. R. A., n. s., 317, note.) The referee found that the investigation made by the commissioners was "not thoroughly made in accordance with the spirit and intent of the agreement." This can hardly be regarded as a finding of bad faith, and seems rather to suggest error through want of sufficient information. It will not be necessary, however, to pass upon this feature of the matter, as a similar question, relieved of some of the difficulties of this one, arises upon the consideration of the next contention.

The theory is advanced in behalf of the plaintiff that

the $324.99, like the $1000, was merely deposited with the commissioners as security for the payment of whatever sum might be found due upon some final investigation to be made later. But the established facts do not bear out that theory. The decision of the commissioners made on May 15, 1902, purported to be final. On June 5, 1902, they made an order for the application of the $1000 to the claimed indebtedness, and it was accordingly at that time transferred to the treasury for the use and benefit of the county. Two days later they filed a statement, which was spread upon the journal, setting out the items upon which their finding was based, and giving a summary of each transaction involved. On July 14, 1902, an order was made that the board proceed in August to examine the accounts of all county officers for the period between 1888 and 1900; and on October 14, 1902, a report was filed regarding a number of "errors and irregularities," but this does not appear to have been made the basis of any claim against the plaintiff, and expressly stated that it did not include "the irregularities of his office as shown . . . in a former report, whereby he was found to be indebted to, and paid back to Miami county, the sum of $1324.99." The plaintiff testified that on May 15 the commissioners, after they had finished the investigation, notified him to come in and pay the $324.99; that he gave them a draft for that sum in payment of the amount they claimed against him, because he had agreed to do so —under the contract. The referee found that he paid it upon demand of the commissioners, in compliance with the terms of his agreement. He paid it directly to the chairman, who on the same day turned it over to the county treasurer. It is clear that the commissioners treated the report of May 15 as their final decision of the matter submitted to them and that their subsequent inquiry was not intended as a re-examination of it. There was no agreement for a

reopening of the inquiry. Under these circumstances the act of the plaintiff in responding to the call for the additional $324.99 was a recognition of the appropriation of the $1000 to the claim against him, and amounted to the payment of the entire sum of $1324.99 in compliance with a demand made upon him under a claim of right. The argument is presented that the plaintiff was dealing with the commissioners as such, and not with the county, that the board had no authority to accept money for the county, and that what they did was to hold the fund as a deposit pending a settlement of the controversy between the plaintiff on the one hand and the county on the other. The commissioners were clearly acting as the representatives of the county and were obviously so dealt with by the plaintiff. In so doing they were within the scope of their authority, as the statute (Gen. Stat. 1868, ch. 25, § 16, subdiv. 5, Gen. Stat. 1909, § 2075, subdiv. 5) empowers them "to represent the county and have the . . . management of the business and concerns of the county, in all cases where no other provision is made by law," and they are held to have the power to compromise and settle doubtful claims. (*Comm'rs of Labette Co. v. Elliott,* 27 Kan. 606.) The demand for payment was made by them on behalf of the county, and although the amount passed through their hands it was in effect paid by the plaintiff to the county.

The law is well settled that a payment made in response to a claim asserted as a matter of right is placed upon the same footing as an accord and satisfaction or a compromise and settlement, and can be recovered only upon proof of fraud, duress, or mistake of fact. (22 A. & E. Encycl. of L. 609-630; 30 Cyc. 1298-1319; Barbour's Law of Payment, ch. 18; 94 Am. St. Rep. 408, note; *County of Wabaunsee v. Walker,* 8 Kan. 431; *K. P. Rly. Co. v. Comm'rs of Wyandotte Co.,* 16 Kan. 587; *Cummings v. Sigerson,* 63 Kan. 340.)

In the last case cited it was said of one who sought to recover a payment voluntarily made: ˙

"The law does not give him the right to pay a demand for which he knows he is not legally liable and then give him a right of action to recover his payment back." (63 Kan. 343.)

In the note from the American State Reports just cited the reason for the rule is thus stated:

"If one would resist an unjust or illegal demand for payment, he should do so at the threshold. If litigation is intended by the party making payment, it should precede payment. Otherwise, the privilege is left to him of selecting his own time and convenience for litigation, delaying it, as the case may be, until the evidence on which his adversary would have relied to sustain his claim may be lost by the lapse of time and the many casualties to which human affairs are exposed." (Note, 94 Am. St. Rep. 408, 410.)

The plaintiff testified that while the investigation was in progress he told the chairman he wished to come before the board; that the reply given was that he would be notified when they were ready for him; and that he was not sent for until after the decision had been made. This evidence tends to impeach the fairness of the investigation, but not to show any fraud practiced upon the plaintiff to induce him to pay the amount found against him. Whatever injustice characterized either the methods or the results of the investigation were known to him, and his course in electing to make the payment was taken with full knowledge of the facts. He paid the sum demanded, not because he was deceived into believing that he had caused a loss of that amount to the county, but because of his agreement to be governed by the finding made. His action therefore was not influenced either by fraud or by mistake of fact.

The petition was not framed upon the theory that the payment was made under duress, nor did the referee so find, but it is suggested in a supplemental

brief that as there is evidence to support such a view this court should pass upon that aspect of the case. It may well be contended that the plaintiff's candidacy for a state office placed him in a position where he had just grounds for believing that a refusal to acquiesce in the demand for payment would expose him to a greater injury than the loss of the money. The restraint he was under in this respect is not of the same character as that discussed in any cases to which our attention has been directed, but the modern tendency is to recognize what is termed moral duress wherever "the payment has been obtained by taking an undue advantage of the situation of the payer." (30 Cyc. 1305; 22 A. & E. Encycl. of L. 613; 2 A. & E. Ann. Cas. 825, note; 2 L. R. A., n. s., 574, note.)    If, however, the payment may justly be regarded as having been made under compulsion, this is only because of the plaintiff's candidacy for office, coupled with the nearness of the election. With the close of the polls in November, 1902, his situation was entirely changed. A controversy with the county commissioners could no longer place him at any peculiar disadvantage. It was then incumbent upon him to act with promptness and to disaffirm the payment within a reasonable time. Whether or not the statute (Gen. Stat. 1868, ch. 25, § 47, Gen. Stat. 1909, § 2123) requiring claims against a county to be presented within two years is fully applicable, as in a somewhat similar situation has been said to be probable (*Richards v. Comm'rs of Wyandotte Co.*, 28 Kan. 326; *Rork v. Comm'rs of Douglas Co.*, 46 Kan. 175), it furnishes by analogy a limit within which some step must have been taken to reclaim the money. We think the inaction of the plaintiff for that period amounted to a final acquiescence in the existing conditions, and that thereafter no action could be maintained to recover the payment.

In any event we must conclude that the plaintiff's action is barred by the statute of limitations. He con-

tends that it is founded upon a written contract and could not be barred inside of five years, and also that the fund was held in trust and that the statute of limitations was not at once set in operation. These contentions turn upon the question already considered—whether the final $324.99 was intended and treated by the parties as a deposit or as a payment, and consequently whether or not the 1000-dollar deposit was converted into a payment. Inasmuch as we hold, upon the grounds already stated, that the entire sum must be regarded as a payment and not as a deposit, it follows that whatever right he had to its recovery grew out of the legal obligation to restore it, and his remedy was upon the county's implied contract to do so. (27 Cyc. 866; 15 A. & E. Encycl. of L. 1101.) The three-year statute therefore applies. (*Burrows v. Johntz*, 57 Kan. 778, 782.)

The judgment is reversed with directions to render judgment for the defendant.