Fritz W. Blume et al., Appellants, v. Crawford County, Iowa, et al., Appellees.

No. 42251.

546

Salinger, Reynolds & Meyers and Ralph Maclean, for appellants.

F. E. Page, W. E. Kahler, and L. V. Gilchrist, for appellee Crawford County Farm Bureau.

Bell & Level, for all other appellees.

KINTZINGER, J.—The Crawford County Farm Bureau Association was incorporated in 1918. This action was brought in January, 1933, against Crawford county, its officers, and against the Crawford County Farm Bureau Association to recover moneys paid and to enjoin the appropriation of 1933. Plaintiffs claim that Crawford county appropriated and paid to the Crawford County Farm Bureau Association various sums from $1,000 to $3,000 per year from 1918 to and including 1932.

Prior to March, 1919, the farm aid statutes authorized an appropriation of $2,500 per year to farm associations where the association certified that it had at least two hundred members and had raised from them a yearly *subscription* of not less than $500.

The statute in force from 1919 to May, 1929, was section 2930 of the Code of 1927, as follows:

"When articles of incorporation have been filed as provided by this chapter and the secretary and treasurer of the corporation have certified to the board of supervisors that the organization has among its membership at least two hundred farmers or farm owners in the county and that the association has raised from among its members a yearly *subscription* of not less than *one thousand dollars*,

the board of supervisors *shall* appropriate to such organization, from the general fund of the county, a sum double the amount of such *subscription*." (Italics ours.)

It is claimed that the amounts appropriated to and received by the defendant farm association prior to 1929 were illegal because the farm association had not so raised a yearly *"subscription"* of either $500, $1,000, or any other amount, prior to May, 1929.

Plaintiffs also claim that no appropriation could be legally made to, or received by, said farm bureau association since May, 1929, because it did not during that time have at least two hundred bona fide members *whose aggregate yearly membership "dues and pledges"* to such organization amounted to not less than $1,000.

Plaintiffs also claim that the farm aid laws (chapter 138 of the Code) both now and as originally enacted are unconstitutional because they indirectly confer and delegate the power of taxation to the farm bureau. They also claim that prior to May, 1929, no provision was made by the association for raising money from the members by "subscription" and that no "subscriptions" were in fact raised during that time; that the statute only permitted appropriations in double the amount of the *subscriptions* raised from the membership, and that prior to 1929 no subscriptions whatever had been raised. Plaintiffs contend that, although dues in the amount of $5 each was paid by the members, such dues could not be considered as subscriptions, and therefore all moneys paid between 1918 and 1929 and received by the farm bureau were unauthorized by law.

Defendant contends that all payments made prior to 1929 have been so long acquiesced in by the plaintiffs and all parties interested; and that all moneys so received by the defendant farm bureau were expended by that association for the objects and purposes thereof during all that time under the bona fide belief of the legality of said appropriations; that, by reason of the delay and laches of the plaintiffs in commencing this action and in allowing the counties to pay and the farm bureau to receive and expend such money, without any objection on the part of plaintiffs, or the parties they represent, they are barred and estopped from making any claim for refund of said amounts. Defendants further contend that all claims for payments received by the farm bureau association prior to 1928, regardless of their legality, are barred by the statute of limitations.

Defendants further claim that the amendment of 1929 changed the former statutory provisions for dues, by providing that, instead of yearly dues of $1, the yearly dues "shall be *not less than $1.00*"; defendants contend that under the present law the county had authority to make the appropriation made in 1929. The defendants also claim that it is a corporation organized under the laws of Iowa relating to farm aid associations, and that said farm bureau has operated for the purposes sanctioned by its articles of incorporation and the laws of the state.

I. We will first consider the constitutionality of the farm aid laws. Plaintiffs claim that the entire farm aid laws, contained in chapter 138 of the Code, are unconstitutional because they delegate to the farm bureau power to levy a tax; and that the legislature has no power to vest the levying of a tax in a body not directly responsible to the people.

Section 2930 of the Code provides that, when certain requirements have been met by a farm association, "the board of supervisors *shall appropriate* to such organization from the general fund of the county a sum double the amount of the aggregate of such dues and pledges." This statute contains no specific provision for the levying of any tax by any person. It does not even provide that the board of supervisors shall levy any tax. It simply directs and commands the board of supervisors to appropriate certain moneys in aid of farm associations, which have adopted articles of incorporation substantially as set out in section 2926. It is claimed that this provision in effect authorizes the farm bureau to levy a tax. In support of their contention plaintiffs refer to the rule announced in State v. Mayor of City of Des Moines, 103 Iowa 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157.

We had occasion to discuss the case relied upon in the case of Fevold v. Board of Supervisors of Webster County, 202 Iowa 1019, 210 N. W. 139, where we said:

"It was held in that case that a statute authorizing a library board, appointed by the mayor, to fix and determine the amount of a library tax, which the city council was then required to levy, was invalid. It was said the right to fix and determine was equivalent to the right to levy, and that the Legislature had no power to vest the levying of the tax in a body not directly responsible to the people of the city. We think the principle there announced is not controlling under the situation presented here."

In the case of Fevold v. Webster County it was claimed that section 2689 of the Code was unconstitutional, for the same reasons advanced in the case of State v. Mayor, 103 Iowa 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157.

Section 2689 provides as follows:

"Should it appear to the secretary of Agriculture that the balance in such fund is sufficient, with the county's allotment of state and federal funds available, to carry on the work in such county for the ensuing year, he shall so certify to the county auditor and when such certification has been made the board shall make no levy for such tuberculosis eradication fund for such year."

In the Webster County case we further said:

"Complaint is further made that section 2689 of the Code of 1924 requires the secretary of agriculture to so certify to the county auditor when the balance in the eradication fund is sufficient, with the county's allotment of state and federal funds available, to carry on the work in the county for the ensuing year, in which case the board shall make no levy for the eradication fund. It is said that this is an invalid delegation of a discretionary legislative power to an individual. * * * The statute does not delegate to the secretary of agriculture the power to determine the amount of the tax or to levy the tax. The board of supervisors is required by statute to levy the tax if the county is enrolled under the county area or the accredited area plan, and to determine its amount within the statutory limitation, and to make no levy only when the secretary of agriculture certifies certain facts to the board. His act, or his failure to act, imposes no burden upon the taxpayer. That is imposed, under express authority of the statute, by the board."

So in the case at bar no express authority to levy any tax is granted to the farm association. The statute does not even require the board of supervisors to levy a tax for this purpose; the statute does not mention the word "levy," and does not specify who shall make the levy. This statute commands the board of supervisors to make an allowance of certain amounts under certain circumstances to be paid to the farm association, as an aid to the great farming industry in this state. It commands the board of supervisors to make this payment out of the general fund. The tax levy creating the general fund is made by the board of supervisors in the usual

manner and at the usual time, and the authority to appropriate therefrom any amount necessary, under the farm aid statute, is vested in the board of supervisors.

Its power to levy any tax is derived from the legislature itself. In this case the board of supervisors in making any farm aid appropriation acts under the direct command of the legislature. The legislature has ordered the board to make the appropriation. The command for the appropriation comes from the highest power in the state, and specifically says: "The Board of Supervisors *shall appropriate*" *to such organization* from the general fund an amount to be arrived at in a certain manner. Such statutes are valid, and not in contravention of any constitutional provision. Nemaha Fair Assn. v. Myers, 44 Kan. 132, 24 P. 71; Westlake v. Anderson, 33 N. D. 326, 156 N. W. 925; Cloud County Farm Bureau v. Board of Comrs., 126 Kan. 322, 268 P. 91.

In discussing this question, the Supreme Court in Westlake v. Anderson, 33 N. D. 326, 156 N. W. 925, loc. cit. 927, said:

"It is contended that the vesting of power in the commissioners to levy the tax upon a petition of a minority of the taxpayers 'is a delegation of legislative powers to a minority of the voters in any county.' There is no delegation of power by the Legislature to a minority of the voters, or at all. *Instead the Legislature itself has declared the limits within which the levy must be kept and the conditions precedent to and under which a levy shall be made.* Nothing is left to discretion of the board, and nothing is delegated to the board, in the way of legislative discretion; that having been fully exercised by the lawmaking power in the first instance."

So in the case at bar the legislature in chapter 138 of the Code has declared the public policy of this state, with reference to extending aid to agriculture, the great basic industry of this state. There is no inhibition against this power in any of the provisions of the Constitution, and it is not repugnant to any constitutional provision. The legislature, under the powers vested in it by the state, has extended aid to farm associations for the purpose of aiding agriculture, horticulture, animal industry, and similar kindred occupations. The unconstitutionality of this act is raised at a time when the national government, and all state governments, are bending every effort to aid agriculture in their present distressed condition. The defendant farm bureau was not organized for private

purposes. On the contrary, it is an enterprise engaged in furthering the welfare and benefit of agriculture, the great basic industry of this state, and for the benefit of the public generally. The act in question is a valid exercise of the state's governmental functions, and does not delegate the taxing power of the state to a nonofficial body. The lower court held this legislation constitutional, and we find no error therein.

■ II. It is also contended that chapter 138 as it existed prior to 1929 extended relief to farm associations only on condition "that the association has raised from among its members a yearly subscription of not less than $1,000," in which event the board of supervisors *shall* appropriate to such organization from the general fund of the county a sum double the amount of such "subscription."

It is contended that no appropriation could be legally made by the board of supervisors prior to 1929 unless the association raised from among its members a yearly "subscription" of not less than $1,000. This contention is true, and we held in Jefferson County **Farm** Bureau v. Sherman, 208 Iowa 614, 226 N. W. 182, that the terms "dues" and "subscriptions" are not synonymous, and that, where the farm association has failed to raise from its members an annual subscription of $1,000, it is not entitled to financial aid from the general fund of the county.

■ Section 2930 was amended in April, 1929, to read as follows:

"When articles of incorporation have been filed *as provided by this chapter* and the secretary and treasurer of the corporation have certified to the board of supervisors of such county that the organization has at least two hundred bona fide members, whose aggregate yearly membership *dues and pledges to such organization, amount to not less than one thousand dollars,* the board of supervisors *shall appropriate* to such organization from the general fund of the county a sum double the amount of the aggregate of such dues and pledges." (Italics ours.)

Under this amendment the board of supervisors is commanded to make the appropriation when it is certified that the yearly "*dues and pledges*" amount to not less than $1,000. The record in this case shows that the annual "dues" collected from the members amounted to more than $1,000. Article 4 of section 2926 now provides that the yearly dues of the members "shall be not less than

one dollar," etc. The "dues" of the membership of the defendant farm association as shown by the record were fixed at $5 per year, and equaled the amount required by the present section 2930. The fact that no additional amounts have been derived from any "pledges" is quite immaterial for the purposes of receiving farm aid. The statute provides that, if the *"dues"* and *"pledges"* raised, reached the required amount, the aid shall be extended. Therefore, if the dues without any pledges provide the amount required by the statute, it is sufficient. The record shows that the statutory requirements were met as to all aid received since 1929. We find no error in the lower court upon this question.

III. It is also contended that the Crawford county farm bureau was not organized for the purpose of co-operating with the state department of agriculture, and was therefore not entitled to the aid received.

Section 2926 of the farm aid laws (chapter 138) sets out substantially the matters to be included in the articles of incorporation. This section provides:

"Such articles of incorporation shall be substantially as follows: We, the undersigned farmers, landowners, and business men of ................... county, Iowa, do hereby adopt the following articles of incorporation:

"Article 1. The objects of this corporation shall be to advance and improve, in ................... county, Iowa, agriculture, domestic science, horticulture, animal husbandry, and the marketing of farm products.".

Section 2927 provides: "Such articles may include other provisions which are not inconsistent with the provisions of this chapter" etc.

Several other articles, not necessary for this discussion, are also included. No other provisions under this law are required to be contained in the articles of incorporation.

The articles filed by the farm bureau, setting out its objects, comply to the letter with the articles required by section 2926. Other articles not necessary to be herein set out are also included. None of them is inconsistent with the statutory requirements. On the contrary, they fully comply therewith. Under its articles it is empowered: To establish and maintain a permanent agricultural school, in which agriculture, horticulture, animal industry, and do-

mestic science shall be taught; to employ one or more teachers, experts, or advisers to teach, advance, and improve agriculture, horticulture, animal industry, and domestic science in the county, under such terms, conditions, and restrictions as may be deemed advisable by the board of directors; and to do all things necessary, appropriate, and convenient for the successful carrying out of the objects of the association.

Plaintiffs claim that, as no provision in the articles specifically show that it was organized to co-operate with the United States Department of Agriculture, the state department of Agriculture, and the Iowa State College of Agriculture and Mechanic Arts, it is not entitled to the aid given or requested. The legislature, in prescribing a form for the articles of incorporation, did not require any reference to such co-operation. The articles filed exactly comply with the requirements of section 2926. It is therefore clear that it was not required that a specific reference to such co-operation be included. It is true the aid given and requested could not be given unless such co-operation was given by the farm bureau. The question as to whether the farm bureau did not co-operate with all three agencies would therefore be a matter of pleading and proof. It is evident, however, from the record that such co-operation did exist. This question was not raised in plaintiffs' petition, and they offered no proof thereon to establish their case. It is necessary to both plead and prove the matters relied on. This objection was not raised or relied on in plaintiffs' petition, and was not established by the proof. Not being raised in the lower court, it cannot be considered on appeal. Seymour v. Shea, 62 Iowa 708, loc. cit. 711, 16 N. W. 196; Wheeler & W. Manufacturing Co. v. Hasbrouck, 68 Iowa 554, 27 N. W. 738; Zion Church v. Parker, 114 Iowa 1, 86 N. W. 60.

IV. It is also claimed that all payments received by the farm bureau prior to 1929 were illegal, and plaintiffs are entitled to recover them, or have them deducted from future appropriations, because no "subscriptions" were raised during that period. It must be conceded that Crawford county has no right to pay, and the farm bureau had no right to receive, the appropriations made between the years 1918 and 1929. It may also be conceded that, if timely and proper actions were commenced against the defendants, payment of the appropriations made during that period of time could have been prevented. Such is the law of this state as announced

in Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 226 N. W. 182. In that case we said:

"The record discloses that there have been no receipts from the members, other than the annual dues of $5 for each member; in other words, nothing has been received or raised by way of 'subscription.'"

In the Jefferson County case we also said:

"The amount which one is required to pay on his dues in order to become a member  *  *  *  is not a 'subscription' within the meaning of section 2930.  *  *  *  It is quite apparent that the use of the word 'dues' and 'subscription' is not synonymous.  *  *  *  It thus appears that the plaintiff has not filed articles of incorporation complying with chapter 138 of the Code, and that it has not raised any money by 'subscription,' but only by the collection of 'dues,' which is not sufficient to entitle it under the statutory law to an appropriation by the board of supervisors."

It appearing from the record that Crawford county had no legal right to make the appropriations, and it further appearing that yearly appropriations were made by the county and received by the farm bureau, plaintiffs claim they are entitled to bring an action to recover the money. It may be conceded that, if proper and timely action had been commenced, plaintiffs might have prevented the appropriations, the payment of the money, and possibly a recovery thereof.

Defendants contend that appellants are now prevented from recovering the amounts paid, on the grounds of equitable estoppel and laches. The record shows that the appellants are over 30 years of age; their father was a member of the defendant farm bureau from its organization in 1918 until 1925; that they lived together and frequently discussed bureau affairs with him, and that for many years they both knew the farm bureau was receiving aid, expending the moneys received for farm bureau purposes; that the money received was expended in the aid of Iowa's basic industry, agriculture, and for the benefit of all citizens and farmers of Crawford county. The public generally was advised of the appropriations by newspaper publications in Crawford county, giving notice of the time and place of the hearing on said appropriations; that plaintiffs made no legal objections thereto.

Plaintiffs contend that the case of Wertz v. Shane, 216 Iowa 768, 249 N. W. 661, is authority for the contention that a taxpayer may bring suit for the recovery of money illegally paid. This is true, but that statement is made with a qualification that it may be recovered *in the absence of grounds of estoppel.* In the case of Wertz v. Shane, 216 Iowa 768, loc. cit. 773, 249 N. W. 661, 663, we said:

" 'If the right of a taxpayer to enjoin the wrongful expenditure of state funds exists, we see no reason why, *in the absence of grounds of estoppel,* he may not also sue to recover back, for the state funds wrongfully expended, if the proper officials refuse to act.' "

In the case at bar it is claimed that grounds of estoppel, preventing the recovery of said money, do exist.

In Wertz v. Shane no grounds of estoppel existed. In that case the money was paid out without the showing of any benefits to the state of Iowa. In the case at bar both parties acted under the assumption that the aid authorized by chapter 138 could be granted to the farm bureau association. The money was paid out for the purpose of being used by the association for the benefit of agriculture in Crawford county; all moneys received were so expended. The farm bureau derived no personal private benefit or gain therefrom. The money was expended to "advance and improve in Crawford County, agriculture, domestic science, horticulture, animal husbandry and marketing of farm products." It was expended for the benefit of the Iowa's great basic industry, agriculture. Plaintiffs knew for many years that this money was paid by the county and received by the farm bureau association to advance such industry. They stood by for many years prior to 1929, knowing that this money was so expended. No move was made to recover any part of it until January, 1933, long after it was all expended.

In this case there is an entire change of position. The money is no longer in the possession of the farm bureau association, and has long since been expended for the benefit of the entire county, including the plaintiffs herein. The settled rule of law is that, where money wrongfully received is paid out upon obligations assumed by its receipt, and expenditures are made under the obligations so assumed, and services performed thereunder, it cannot be recovered under the equitable doctrine of laches.

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, 'he who seeks equity must do equity,' 'he who comes into equity must come with clean hands,' and 'the laws serve the vigilant, and not those who sleep over their rights,' and is based on considerations of public policy. Its object is in general to exact of the complainant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy." 10 R. C. L. 395, section 142.

"While statements are to be found in some of the cases intimating that unreasonable delay, and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity, the generally accepted doctrine appears to be that laches is not like limitation a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relations of the property or the parties. Since lapse of time has a tendency to obscure evidence, and often makes it impossible to discover the truth, it is, of course, one of the elements to be considered by the court in applying laches to stale claims, but it is only one, and while important, it is not ordinarily the controlling or most important one. Hence, it has been said, laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other it is a ground for denial of relief." 10 R. C. L. 396, section 143.

Frederick v. Douglas County, 96 Wis. 411, 71 N. W. 798; Henry

v. Dolen, 186 Wis. 622, 203 N. W. 369; Webster v. Douglas County, 102 Wis. 181, 77 N. W. 885, 78 N. W. 451, 72 Am. St. Rep. 870; Vicksburg, S. & P. R. Co. v. Scott, 52 La. Ann. 512, 27 So. 137; Meistrell v. Board of Comrs. of Ellis County, 76 Kan. 319, 91 P. 65; Sleeper v. Bullen, 6 Kan. 300; Hutchinson & S. R. Co. v. Comrs. of Kingman County, 48 Kan. 70, 28 P. 1078, 15 L. R. A. 401, 30 Am. St. Rep. 273; Lamb v. R. Co., 39 Iowa 333; Brown v. Merrick County, 18 Nebr. 355, 25 N. W. 356; Clark v. Beadle County, 42 S. D. 146, 173 N. W. 743; North v. Platte County, 29 Neb. 447, 45 N. W. 692, 26 Am. St. Rep. 395; Kennedy v. Montgomery County, 98 Tenn. 165, 38 S. W. 1075; Kelly v. Board of Comrs. of Miami County, 85 Kan. 38, 116 P. 477; Ashton v. Board of Comrs., 45 Okl. 731, 147 P. 305.

In the case of Frederick v. Douglas County, 96 Wis. 411, 71 N. W. 798, it appeared that the defendant was retained by the defendant county to perform legal services in tax cases against the county. The defendant had a county attorney, and under the Wisconsin statute no such contract could legally be entered into. The defendant pleaded estoppel on account of laches. He began work on the tax cases in February, 1895, and the action was commenced in November, 1895. In that case the court says:

"The services ran through a number of months, and he undoubtedly has fully earned all the money which has been paid him. During all this time the plaintiff and his fellow taxpayers remained silent, and allowed the services to be rendered and the money to be paid. They took no action until the latter part of November, 1895. Then they came into a court of equity, and asked for the stoppage of all payments in the future, and to this they are undoubtedly entitled. But he who comes into a court of equity must do equity. Could it, under any view of the circumstances, be said to be equitable to compel [the defendant] to pay back the money which he received for long and valuable labors, rendered honestly and in good faith, the benefit of which the corporation has received, and concerning which the taxpayers of Superior were, or ought to have been, fully informed during their entire progress? Were a court of equity to make this judgment under the circumstances, we should regard it as having become an engine of oppression, rather than an instrument of justice. We do not rest this decision entirely upon the ground that the remedy has been lost by laches, or that the county has become estopped, but upon the ground that under all

the circumstances, the plaintiff having invoked the relief of a court of equity, that court, in granting the relief, will not take away the fruit of honest labor."

The case of Meistrell v. Board of Comrs. of Ellis County, 76 Kan. 319, 91 P. 65, was an action in which it appeared a contract was illegally awarded to a bridge company for the construction of a bridge. The bridge company immediately commenced work. Thereafter, when the construction of the bridge was well advanced, the plaintiff and others instituted the action, basing their right on the ground that the contract was illegal. The defense of laches and estoppel were urged against plaintiffs' right to maintain the action. In that case the court says:

"It was contended that the board had failed to comply with the law in several particulars; but there was no charge of bad faith against the board or of fraud in contracting for the building of the bridge, and it was said that so long as the board acted within its authority no injunction would lie to restrain it, and that 'a taxpayer who seeks to enjoin the payment of money for the erection of a public bridge, which he claims is being constructed in violation of law, must act with reasonable promptness. If he is guilty of gross laches, and knowingly permits the contractor to incur liabilities in good faith in the construction of the greater portion of the work, an injunction will be denied.' * * * The delay of the plaintiffs in challenging the proceedings was unreasonable, and the court rightly held that they were not entitled to the equitable relief sought."

In Clark v. Beadle County, 42 S. D. 146, 173 N. W. 743, the court said:

"The trial court concluded that appellants were guilty of laches in delaying the commencing of this action; that they, as taxpayers, had not been damaged or injured by the awarding of the contract to the Bridge Company; and that they should be held estopped from maintaining this action. We are of the view that there was no error in such conclusions."

In Brown v. Merrick County, 18 Neb. 355, 25 N. W. 356, the court of Nebraska said:

"But even if the county board had exceeded its powers some-

what, a taxpayer could not wait until the contractor had performed a considerable portion of the work of which the public would have the benefit, and which would be lost to the contractor, and then enjoin the payment of the work."

In the case of North v. Platte County, 29 Neb. 447, 45 N. W. 692, 26 Am. St. Rep. 395, the court said:

"The action was brought nine years after the bonds were issued and delivered, and plaintiff shows by his petition that he has been a taxpayer of Platte county during 'many years past.' There are many cases holding that such delay and laches will defeat an action, where relief would have been granted had the application been seasonably made. Supervisors v. Schenck, 5 Wall. 772 [18 L. Ed. 556]; County of Clay v. Society, 104 U. S. 579 [26 L. Ed. 856]; Johnson v. Stark County, 24 Ill. 75; Keithsburg v. Frick, 34 Ill. 421; Com. v. Pittsburgh, 43 Pa. 391; Steines v. Franklin County, 48 Mo. 167 [8 Am. Rep. 87]; Bradley v. Franklin County, 65 Mo. 638; Burr v. Carbondale, 76 Ill. 455; Burlington & M. Railroad Co. v. Saunders County, 16 Neb. 123, 19 N. W. 698. Upon the whole case no sufficient reason has been shown to justify the court in granting or continuing the injunction in force in this case. The injunction is therefore dissolved, and the action dismissed."

In the case at bar the appellants did not commence their action until 15 years after the first payments had been made, and 5 years after the payments of 1928 had been made and received. The facts in this case fully warrant the application of the defense of laches and estoppel under well-known equitable principles referred to. The equities of this case, intermingled with the doctrines of laches and estoppel, prevent a recovery herein. Where money is expended for the benefit of another party, he cannot idly sit by, observing the expenditures being made, himself receiving benefits therefrom, and then come into court long years afterwards asking a return of the money. The money was expended by the farm bureau for the benefit of Crawford county and of the agricultural industry in that county; that county has received full value for all of such expenditures by services performed by the farm bureau association in advancing and improving in Crawford county agriculture, domestic science, horticulture, animal industry, and the marketing of farm products.

560

It is our conclusion that for the reasons herein set out the Crawford county farm bureau should not be required to return the money so expended, and that plaintiffs should be and are estopped from now making the claim alleged or securing the relief demanded.

From the conclusions hereinabove reached, a consideration of any other question urged is unnecessary. We find no error in the decree of the lower court, and the same is hereby affirmed.

KINDIG, ANDERSON, MITCHELL, and DONEGAN, JJ., concur.

REHEARING DENIED JANUARY 19, 1934.