L. A. BUNKER *et al.* V. THE CITY OF HUTCHINSON *et al.*

No. 14,924.   (87 Pac. 884.)

SYLLABUS BY THE COURT.

1. INJUNCTION—*Parties—Taxpayer—Time of Beginning Suit.* An owner of property may, under chapter 334 of the Laws of 1905, maintain a suit against the mayor and council to enjoin them from entering into any contract for the paving of a street of the city, or the doing of any illegal act which may result in the creation of a public burden or the levy of any illegal tax, charge or assessment, although the amount to be charged against his property has not been ascertained.

2. MUNICIPAL CORPORATIONS—*Manner of Awarding Paving Contracts.* The statute governing cities of the second class does not require that contracts for the paving of streets shall be let to the lowest bidder, but the manner of awarding such contracts is left to the sound discretion of the mayor and council.

3. ———— *Ordinance Requiring Competitive Bidding Not Binding.* In such a case the mayor and council cannot tie their

74   651
b74   899

74   651
f77   861

.74   651
81   597

own hands nor limit the discretion vested in them by the passage of an ordinance requiring competitive bidding, and such ordinance will not prevent them from contracting in good faith for a pavement in which patented articles or processes are used.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed November 10, 1906. Affirmed.

*George A. Vandeveer,* and *F. L. Martin,* for plaintiffs in error.

*A. C. Malloy,* for defendants in error; *Prigg & Williams,* of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: The district court sustained a demurrer to the petition of L. A. Bunker and others, who sought to enjoin the city of Hutchinson from providing for assessments and taxes to pay for the paving and curbing of Main street in that city. On a petition of property owners asking for the construction of a bitulithic pavement an ordinance was passed providing for the building of such pavement, and in pursuance of that ordinance a contract to curb and pave the street was awarded to the Kansas Bitulithic Paving Company, which proceeded with the work. Property owners contested some of the preliminary proceedings, but these were sustained by the courts. (*Salt Co. v. Hutchinson,* 72 Kan. 99, 82 Pac. 721.) In their petition in this case the plaintiffs allege that the contract and other steps taken were unwarranted and illegal because bitulithic pavement is a monopoly, owned by Warren Brothers, who have an interest in the Kansas Bitulithic Paving Company; that portions of the material, process and machinery are covered by letters patent and trade-marks, which practically give Warren Brothers and those with whom they act a monopoly of the contracts for bitulithic pavement. It is also averred that their pavement is not superior to that

made out of similar material by others, which may be had at less cost. It is further alleged that the monopoly mentioned, and the combination of the parts covered by the patent with those not so covered, practically prevented competition or the letting of the pavement to the lowest responsible bidder, and that in this respect it violated a city ordinance. The ordinance in terms provides that the mayor and council shall let such contracts "to the lowest responsible bidder, as determined by the mayor and council, the right being reserved by said mayor and council to reject any and all bids." The petition set out the proceedings of the mayor and council relating to the matter, including the ordinances authorizing the paving, as well as the levying of special assessments to pay for it.

The defendants first contend that plaintiffs had no right to maintain the suit when it was brought; that if they had a right of action this one was prematurely brought; and that the state was the only party which could then institute a proceeding. This contention is based upon the theory that the owners of abutting property affected by the illegal tax proceedings may not institute a suit to enjoin an assessment against their property until the amount chargeable against it has been ascertained. Until the passage of a recent statute it was held that such an owner of property was not so far affected by preliminary proceedings which had not been brought up to the ascertainment of an assessment against his property as to give him a right of action to enjoin the progress of a proposed improvement. (*Bridge Company v. Comm'rs of Wyandotte Co.*, 10 Kan. 326; *Challiss v. City of Atchison*, 39 Kan. 276, 18 Pac. 195; *Mason v. Independence*, 61 Kan. 188, 59 Pac. 272.) The legislature of 1905, however, expanded the remedy of injunction against the levy of an illegal tax, charge or assessment by permitting a person whose property might be affected by such a tax, charge or assessment "to enjoin any public officer,

board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge or assessment." (Laws 1905, ch. 334, § 1; *Gas Co. v. Railway Co., post.*)

Defendants call attention to a part of the act authorizing cities of the second class to levy assessments for the improvement of a street which provides that "no suit to set aside the said assessments shall be brought after the expiration of thirty days from the time the amount due on such lot liable for such assessment is ascertained." (Gen. Stat. 1901, § 1016.) It is contended that this section specially applies to the matters of improving streets and must control in suits of this character. The provision, as will be observed, gives no remedy. An owner must look elsewhere for the remedy of injunction. But in it is found a limitation on the remedies which the code provides. It is no more than a statute of limitation which prohibits the bringing of a suit of any kind to annul an assessment more than thirty days after the amount due on the assessment is ascertained. The plaintiffs were, therefore, entitled to the benefits of the act of 1905, and could challenge by injunction any step taken or the doing of any act by the city council not authorized by law which might result in the levy of an illegal tax or assessment against their property.

On the merits of the case the principal contention is that there was in fact no competition in the letting of the contracts for the bitulithic pavement. If it were assumed that the law required competitive bidding for such work, the fact that the material which entered into it was covered by letters patent, and therefore under the control of a single party, would not necessarily defeat a contract nor prevent the city from obtaining the use of the patented article. (*Yarnold v. City of Lawrence,* 15 Kan. 126; *The State, ex rel., v. Shawnee Co.,* 57 Kan. 267, 45 Pac. 616.) But is com-

petitive bidding required? There is no charter provi-
sion or statute governing cities of the second class
which requires the mayor and council to let contracts
for paving or other like improvements to the lowest
bidder. In other statutes providing for public struc-
tures or the making of public improvements competi-
tive bidding is required; but for some reason no such
provision is made for the letting of such contracts in a
city of the second class. The mayor and council are,
therefore, vested with full discretion as to the kind of
pavement which shall be used and also as to how the
contracts for it shall be let.

It is generally regarded that competitive bidding for
public work is a measure of safety which prevents ex-
cessive or fraudulent allowances for such work; but,
as counsel have said, combinations between bidders
have been known to be made so that there was in fact
no competition, and instead of being a protection the
plan was used as a method of obtaining extravagant
allowances from the public treasury. The legislature
may have concluded that to compel the mayor and
council to accept the lowest bid would not be the wisest
or safest plan, and might not secure the best material
for the paving nor the highest skill in constructing it.
As a safeguard for the public interest provision was
made for a detailed estimate of the cost of a street im-
provement by the city engineer, and that no contract
should be let for the work in excess of the estimated
cost. This is substantially the only limitation upon the
discretion of the mayor and council in contracting for
such an improvement.

In this case, as we have seen, the mayor and council
passed an ordinance providing that the work should be
let to the lowest responsible bidder, and it is argued that
the ordinance is the law of the case and is binding upon
that body. Can that tribunal thus tie its own hands?
It was given the discretion to contract for any material,
and with or without competitive bidding, as it might

deem wise or best. Can it limit a discretion which, it must be presumed, was vested in it for the public good? We think not. The limits of the powers and duties of the mayor and council are found in the charter act. They cannot exercise a power not conferred therein, nor surrender or shirk a duty or responsibility which it places upon them. The discretion was lodged in them for the protection and benefit of the people. They cannot surrender that discretion any more than the legislature can devest itself of the discretion placed in it. The passage of an act by the legislature does not tie its hands or limit the legislative discretion which the people have conferred upon it. The passage of an act has no binding effect upon the same or any subsequent legislature, unless contracts or vested rights have arisen under it. (*Gilleland v. Schuyler*, 9 Kan. 569.)

This question was before the supreme court of California, in the case of *Thompson v. Board of Trustees*, 144 Cal. 281, 77 Pac. 951, and it was there expressly held that the board of trustees of a city may not, by ordinance or otherwise, devest itself, for any length of time, of legislative and discretionary powers vested in it by the general law. In the case of *City of Atlanta v. Stein*, 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335, the validity of an ordinance adopted by the mayor and general council, requiring the union label on all city printing, was in controversy. The charter did not require the mayor and general council to let contracts for public work to the lowest bidder, but, under its provisions, the municipal authorities were invested with a wide discretion. In holding the ordinance to be invalid the court remarked:

"The vice of the ordinance now under consideration is that it cuts off the power to fully and freely exercise that very discretion which the public good requires the mayor and general council to exercise in making contracts. It effectually ties their hands and prevents their availing themselves of opportunities to make advantageous agreements in behalf of the city, which it

Bunker v. Hutchinson.

is idle to say would not be presented were this ordinance out of the way.  We cannot, therefore, escape the conclusion that in adopting this ordinance the mayor and general council exceeded their authority." (Page 792.)

The case of *Fineran, &c., v. Central Bitulithic Paving Co., &c.,* 116 Ky. 495, 76 S. W. 415, is cited as an authority that an ordinance requiring competitive bidding is as binding on the council that passed it as if the provision had been inserted in the charter.  There the ordinance was based on a charter provision, not that competitive bidding for contracts was absolutely required, but that the council should adopt a uniform system to govern street construction.  This provision was legislative authority to the council to limit its discretion.  When the uniform system was adopted, as the charter provided, it was of course binding on the council until it was modified or repealed.

Since the statute does not limit the discretion of the mayor and council, nor authorize its limitation, the ordinance enacted does not control their discretion and is without binding force.  Their discretion is not an arbitrary one, but must be exercised honestly and in good faith.  They are to act on the dictates of their own judgment and conscience, and not on the judgment of others; and the fact that their judgment may not accord with that of the court, or that their discretion was not exercised as the court would have exercised it, is no ground for nullifying their action.  Fraud or corruption is not charged against the mayor and council, but so far as appears they exercised an honest discretion and did what they deemed to be for the best interests of the city.

Counsel seem to contend that, even if there is no requirement of law for competitive bidding, it was still the duty of the city officers, in the interest of the public, to let the contract to the lowest bidder.  In *Yarnold v. City of Lawrence,* 15 Kan. 126, it was held that, in

42—74 KAN.

the absence of an express direction of law to let contracts to the lowest bidder, no letting or competition is necessary. In volume 1 of Spelling on Extraordinary Relief, section 718, it is said:

"Where no conditions or restrictions are imposed upon municipal officers in the matter of letting contracts they are not obliged to let the work to the lowest bidder, and cannot be enjoined for a refusal to do so unless guilty of fraud. They may exercise an unlimited discretion so long as they are not guilty of gross abuse of discretion and do not pervert their powers to such an extent as to amount to a fraudulent misappropriation of the public funds." (See, also, *Schefbauer v. Kearney*, 57 N. J. Law, 588, 31 Atl. 454; *Elliot v. Minneapolis City*, 59 Minn. 111, 60 N. W. 1081; *Riehl v. City of San Jose*, 101 Cal. 442, 35 Pac. 1013; *Kingsley v. City of Brooklyn*, 5 Abb. New Cas. [N. Y.] 1; 20 A. & E. Encycl. of L. 1165.)

There are no limitations to prevent the mayor and council from obtaining and applying a patented article and process in paving a street of the city, nor is there anything alleged or shown why the contract for bitulithic pavement made by the defendants should be annulled or enjoined. The judgment of the district court is therefore affirmed.

All the Justices concurring.