THE WATER, LIGHT & GAS COMPANY v. THE HUTCHINSON INTERURBAN RAILWAY COMPANY *et al.*

No. 14,993.   (87 Pac. 883.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Issuance of Bonds to Aid a Railroad.* Chapter 67 of the Laws of 1886 (Gen. Stat. 1901, §§ 5907-5912) does not authorize a city of the first or second class to vote aid and issue bonds to purchase lands for a right of way, depot grounds and terminal facilities for a railroad company whose entire line is confined within the corporate limits of such city.

2. INJUNCTION—*Parties—Taxpayer.* Under chapter 334 of the Laws of 1905 a taxpayer may enjoin any board or body from entering into any contract or doing any act not authorized by law which might result in the creation of any public burden.

Error from Reno district court; PETER J. GALLE, judge. Opinion filed November 10, 1906. Reversed.

*H. Whiteside, George A. Vandeveer, F. L. Martin,* and *Fairchild & Lewis,* for plaintiff in error.

*Prigg & Williams,* and *A. C. Malloy,* for defendants in error.

The opinion of the court was delivered by

GREENE, J.: This is a proceeding to reverse an order of the district court of Reno county refusing to grant an injunction restraining the mayor and council of the city of Hutchinson from issuing $20,000 of the city's bonds to the Hutchinson Interurban Railway Company. The material allegations of the petition are that the plaintiff is a large real-estate owner and taxpayer in the city of Hutchinson; that the city of Hutchinson is a city of the second class; that the other defendant is a railway corporation organized and existing under and by virtue of the laws of the state of Kansas, with its principal place of business in the city of Hutchinson; and that a petition signed by more than two-fifths of the resident taxpayers of the city of Hutchinson was presented to the mayor and council of such city January 18, 1906, requesting the mayor and council to submit, at a special election, to the qualified voters of the city a proposition to extend aid to the amount of $20,000 to railway corporation, to be used in the purchase of its right of way, depot grounds, and terminal facilities, and to issue bonds of the city therefor.

An election was called, at which a majority of those voting voted in favor of extending the aid and issuing the bonds. The plaintiff applied to the district court of Reno county for an injunction restraining the mayor and council from issuing such bonds, which was denied, and it prosecutes this proceeding.

Plaintiff contends that the petition presented to the mayor and council asking the city to vote aid and issue the bonds to the railway corporation did not bring the petitioner within the statute authorizing cities of the first or second class to aid in the construction of railroads or to extend aid in purchasing a right of way, depot grounds or terminal facilities. The petition reads:

"The conditions upon which said bonds shall be voted and issued are: That the Hutchinson Interurban Rail-

way Company shall construct and build a line of railroad, standard gauge, propelled by electric current or other mechanical power, including all necessary sidetracks and switches, preparatory to running the cars thereon from a point on Seventeenth street in said city and over Main street, Fourth avenue and Avenue A to the distance now occupied by the Hutchinson Streetrailway Company. Said bonds to be delivered to the Hutchinson Interurban Railway Company as soon as the track is laid upon said streets, provided said track is laid and cars running thereon on or before the 1st day of September, 1906, delays by litigation and unavoidable casualties excepted."

The objection to this petition is that it describes the railroad for which aid was requested as a line wholly within the city. It may also be mentioned that the ordinance calling the election and making it obligatory on the mayor and council to issue the bonds when the railroad company should comply with the conditions expressed in the petition followed the exact language of the petition in this respect.

The aid was attempted to be secured under the provisions of the act of February 26, 1886, being sections 5907 to 5912 of the General Statutes of 1901. The grant of authority to cities of the first or second class to aid railroad companies in securing and paying for land for a right of way, depot grounds and terminal facilities is found in section 5907, which provides:

"When a petition in writing, signed by at least twofifths of the resident taxpayers of any incorporated city of the first or second class, shall be presented to the mayor and council of such city, asking that a vote be taken and an election held upon the question of aiding any railroad company constructing or proposing to construct its line of railroad *into or through* said city, in securing and paying for land for right of way, depot grounds, and terminal facilities, the mayor and council of such city shall cause an election to be held to determine whether such city shall aid such railroad company in securing and paying for lands for right of way, depot grounds and terminal facilities."

It will be observed that such cities are only authorized to grant aid for such purposes to railroad companies that propose to construct a line of railroad *into* or *through* such city. The line must come into the city and may pass through it, or, as stated in the proviso in section 5911, "no such bonds shall be issued until the railroad to which it is proposed to extend aid for the purposes hereinbefore indicated shall be completed and in operation *through* the city voting in favor of such aid, and the issuance of such bonds, or *to such point* in such city as may be specified in the proposition set forth in the petition required by this act."

The preposition "into" indicates entrance—passing from the outside to the inside—a penetrating, and was used in this statute in its ordinary and generally accepted meaning, implying that the line of railroad to which a city can extend aid must be a line entering into the city, and must of necessity therefore come from the outside, and must either pass through the city or to such point in the city as may be specified in the proposition set forth in the petition. The railroad proposed in the petition to be built not being a line entering the city or passing through it, but one whose beginning and termination were wholly within the corporate limits of such city, is not such a line of railroad as the statute authorizes a city to aid. Statutes authorizing municipalities to extend aid to public utilities are to be strictly construed, and a full and exact compliance with their provisions must be shown or the bonds should not be allowed to issue. (*Lewis v. Comm'rs of Bourbon County*, 12 Kan. 186; *Cowdrey v. City of Caneadea*, 16 Fed. 532.) Authority cannot be found in the statute authorizing a city of the second class to vote aid and issue bonds to aid a railroad corporation to purchase lands for a right of way, depot grounds or terminal facilities whose entire line is within the limits of the city. The petition presented to the mayor and council in this instance confined the entire line of rail-

road to be built within the city limits.　The bonds are therefore void.

It is argued by the defendants that plaintiff cannot maintain this suit because in the very nature of things a judgment in its favor would relieve all the taxpayers of the city from the burden which would be imposed upon them if the bonds were issued, wherefore the plaintiff puts itself in the attitude of bringing a suit for the benefit of the public.　Section 1 of chapter 334 of the Laws of 1905, amendatory of section 253 of the code of civil procedure (Gen. Stat. 1901, § 4700), reads as follows:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge, or assessment, or any proceeding to enforce the same, or to enjoin any public officer, board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge or assessment."

The difference between the act amended and the amendment is that the latter gives to the person seeking relief a right of action earlier in the tax proceedings, and also gives to such person a right to have an injunction against any public officer, board or body to restrain them from entering into contracts which would result in imposing upon his property an illegal tax. The plaintiff might have waited until an attempt was made to sell its property for the non-payment of the taxes levied to pay this bonded indebtedness, but it was not compelled to do so.　The statute gives the right of action at the inception of any attempt to create such illegal burden.　The plaintiff is not suing on behalf of the public or in the public's interest, but in its own name, for the protection of its own property.　A judgment in its favor may result in relieving all the property in the city from paying taxes to liquidate the indebtedness which the city is trying to create, but that would be only an incident in the protection of its own

property and not a reason why it should not be permitted to maintain an action at this time.

For the reasons herein suggested the order of the court below is reversed and the cause remanded, with directions that the demurrer be overruled and the temporary injunction allowed, and that the order heretofore issued by this court remain in force until the mandate in this case is acted upon.

JOHNSTON, C. J., BURCH, MASON, PORTER, GRAVES, JJ., concurring.

SMITH, J. (concurring specially) : I concur in the foregoing decision upon the questions discussed in the opinion which embrace all that is necessary to decide the case. The language used, however, may seem to justify the inference that if the petition were for the calling of an election upon the question of voting aid to a railroad to be built into or through the city, and all of the proceedings conformed to the petition, and the railroad had been built "into" the city, the judgment of the court below would have been affirmed.

It is contended that the evidence shows that all the proceedings contemplated the construction of a street-railroad only, and that the railroad so far completed is only a street-railroad with unusually heavy rails. It should not be inferred that this decision, in any sense, determines what character of railroads cities are authorized, by the statute cited in the decision, to aid.