No. 19,870.

JOHN HARTZLER, *Appellant,* v. THE CITY OF GOODLAND et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. ISSUING CITY BONDS—*Injunction—Parties Plaintiff.* A private citizen whose burdens as a taxpayer will be affected by a proposed bond issue is authorized to maintain a suit to enjoin such issue as illegal under section 265 of the civil code.

2. SAME—*Petition Not Demurrable.* A petition which prays for a permanent injunction is not demurrable merely because it is unverified or insufficiently verified.

3. INJUNCTION — *Petition Asking Permanent Injunction — Verification.* Where no restraining order or temporary injunction is sought, a petition praying for a permanent injunction to prevent an illegal bond issue may state a cause of action although it is unverified.

4. CITY BONDS — *Vacancy in City Council — Issue Legal.* A proposed issue of bonds to enlarge, repair and improve the waterworks of a city will not be enjoined on the sole ground that a vacancy existed in the city council at the time the bond issue was determined and authorized.

5. SAME — *Publication Notice — "Three Consecutive Weeks" — Statute Complied With.* The notice "for . . . three consecutive weeks" required by section 4 of chapter 124 of the Laws of 1913 and which must precede the enactment of a bond ordinance is satisfied by one publication in each of three separate and consecutive weeks, following *Pierce v. Butters,* 21 Kan. 124, 128, and *Tidd v. Grimes,* 66 Kan. 401, 71 Pac. 844.

6. SAME—*Constitutional Law.* Objections to the constitutionality of chapter 124 of the Laws of 1913 considered and overruled.

9—97 KAN.

Appeal from Sherman district court; CHARLES W. SMITH, judge. Opinion filed January 8, 1916. Affirmed.

*John Hartzler*, and *C. C. Perdieu*, both of Goodland, for the appellant.

*E. F. Murphy*, of Goodland, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a decision of the district court of Sherman county sustaining a demurrer to a petition which prayed for a permanent injunction restraining the city of Goodland and its officials from issuing bonds to pay for repairing, extending, enlarging and improving the city waterworks.

The plaintiff's petition alleged that he was a resident taxpayer of the city; that he brought his action on his own behalf and for numerous other resident taxpayers; that the city and its officers were about to issue and sell city bonds in the sum of $30,000, thereby creating an indebtednes against the city, and were about to levy taxes upon the property of the plaintiff and other taxpayers to pay these bonds; and that the proposed bond issue was illegal for various reasons; that Goodland had been a city of the second class for more than twenty years, and for more than two years had owned and operated its waterworks; that it is a city of three wards, governed by a mayor and council, having two councilmen in each ward; that in August, 1913, there was a vacancy in the council occasioned by the permanent removal of councilman Carmichael from the city, and that the mayor and city clerk knew of the vacancy but made no provision to fill it, but continued to transact the city business for many months with a council of only five members. It was further alleged that on January 15, 1914, this council of only five members passed a resolution, and on March 13, 1914, passed an amendatory resolution, declaring it necessary to extend, enlarge, repair and improve the city waterworks. The first resolution was published on January 16, 1914, and the second on March 13, 1914. On the latter date a notice was published advising the residents of Goodland that on March 28, 1914, an ordinance would be passed by the mayor and councilmen providing for such im-

provements, in accordance with a resolution which had been passed and approved on January 6, 1914, and on March 3, 1914, and that the ordinance would provide for the issuance of $30,000 in bonds to pay for the same. The notice also recited that any person objecting might be heard at the time specified. This notice was published on March 13, 20 and 27, 1914, "for only fifteen consecutive days and not for three consecutive weeks as required by law."

The petition further alleged that chapter 124 of the Laws of 1913 was unconstitutional in that it violated section 20 of article 2 of the constitution of this state because the act was passed by the legislature without an enacting clause. The act was further alleged to be in conflict with section 16 of article 2 of the constitution because the subject matter of the act was not clearly expressed in the title; that the acts repealed by the statute were not clearly expressed in the title; and that the act violated section 17 of article 2 of the constitution because it applied only to cities already owning waterworks and was therefor lacking in uniformity in its application to all municipal corporations in the same class.

Following the prayer for an injunction and costs was the following verification, no other affidavit being filed:

"*State of Kansas, Sherman County, ss.*

"I, John Hartzler of lawful age being first duly sworn depose and say that I am the plaintiff in the above entitled cause and that I have read such petition and the statement of facts therein contained are true, as I verily believe, so help me God.            JOHN HARTZLER.

"Subscribed and sworn to," etc.

To this petition, a demurrer was lodged alleging: "First: Plaintiff has no legal capacity to sue in said cause. Second: That the petition does not state facts sufficient to constitute a cause of action against the said defendants or either of them."

This demurrer was sustained and the case is here. No specification of errors is assigned. Appellant's brief covers many points. Counsel for the appellees contents himself with one, which is the want of a positive affidavit to support the application for an injunction.

1. This action was brought by the plaintiff, a private citizen, under section 265 of the civil code, which provides:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge, or

assessment, or any proceeding to enforce the same, or to enjoin any public officer, board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge, or assessment; and any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction." . . .

The statute just quoted wholly disposes of the first point raised by the demurrer. The plaintiff clearly had the right to bring the action, and such actions have frequently been upheld by this court. (*Gilmore v. Norton,* 10 Kan. 491; *Bunker v. Hutchinson,* 74 Kan. 651, 87 Pac. 884; *Gas Co. v. Railway Co.,* 74 Kan. 661, 665, 87 Pac. 883.)

2. Touching the verification, it may be conceded that it is defective. (*Atchison v. Bartholow,* 4 Kan. 124.) But it must be observed that no preliminary injunction or restraining order was sought by the plantiff. No such interlocutory order could lawfully issue except upon positive sworn testimony, and to have such testimony in convenient and available shape for presentation to a court or judge to support an application for an interlocutory order, it is common and good practice to verify the petition. (Civ. Code, § 251.) But where no injunctive order is sought except upon full and final consideration, before which time the pertinent facts will have been fully attested by the formal introduction of sworn evidence, or by agreement as to the facts, the want of a preliminary affidavit when the petition is filed is immaterial. In other words, it is the injunction and not the petition which needs the support of sworn testimony to justify it. (10 Encyc. Pl. & Pr. 966; 22 Cyc. 931; *Black v. Henry G. Allen Co.,* 42 Fed. 618, 9 L. R. A. 433.)

3. Since the decision of the trial court can not be sustained upon the ground on which counsel for the appellee seeks to justify it, let us see if other demurrable grounds do not appear on the face of the petition sufficient to sustain the judgment.

How does the vacancy in the city council affect the validity of the proposed bond issue? Appellant invokes the well-known rule that where power is vested in an official body, all its members must have a reasonable opportunity to be present and

participate in its deliberations, although a majority may lawfully control its official action.    (Gen. Stat. 1909, § 9037; *Railway Co. v. Meyer,* 58 Kan. 305, 49 Pac. 89.)

It may readily be conceded that where a statutory board is created for the discharge of a special duty, the rule in *Railway Co. v. Meyer,* supra, should be strictly adhered to.    But the public business of municipal corporations arises from day to day and should be attended to as it arises.    Is it imperative that the functions of local municipal government be suspended in case of a vacancy in the city council? . If there are sufficient members of the council remaining in office who vote for and sanction the work to be done or the project to be undertaken to constitute a majority of the entire constituent membership, and not merely a majority of a quorum, it seems that their official action is valid.    Tending to support this view are: *Satterlee v. San Francisco,* 23 Cal. 314; *State ex rel. Harty v. Kirk,* 46 Conn. 395; *Knoxville v. Knoxville Water Co.,* 107 Tenn. 647, 64 S. W. 1075; 2 Dillon, Municipal Corporations, 5th ed., §534, and 2 McQuillan, Municipal Corporations, §§ 593, 594.

An examination of section 1357 of the General Statutes of 1909 is helpful.    It is there provided that permanent removal from the city causes a vacancy in any city office.    Then it proceeds thus:

"Vacancies in the offices of mayor and councilmen shall be filled for the unexpired term at a special election to be called and held for that purpose, as may be provided by ordinance."

Now it can not be the law that the public business of Goodland should be suspended until an ordinance is passed regulating the calling of an election to fill a vacancy in the office of city councilman, and until an election is called thereunder, the result canvassed and declared, and the person elected qualified and seated.

4. Turning next to the question of notice, the statute (Laws 1913, ch. 124, § 4) provides that before the bond ordinance is enacted a notice shall be published to advise the citizen taxpayers of the projected bond issue.    It reads: "Such notice shall be published for at least three consecutive weeks  .  .  .  prior to the date fixed therein for the passage of such ordinance."    The notice was published on March 13,

March 20 and March 27. Apparently the city proceeded on the theory that a notice published each week for three successive weeks was a sufficient compliance with this provision. The gist of appellant's contention is that since three weeks are twenty-one days, notice should have been given for that period. It is not an easy matter to harmonize all the decisions touching the computation of time for notice, interpreting as they do the vast multitude of statutes which in one way or another prescribe notice as a condition precedent to official action. In *Pierce v. Butters*, 21 Kan. 124, however, we find a precedent almost identical with the case at bar. There the question was whether a notice first published on April 13, and last published on April 27 was a sufficient compliance with a statute requiring notice for three consecutive weeks. Mr. Justice VALENTINE said:

"They amended the other affidavit by filing a new and amended affidavit, showing that said notice was published in said weekly newspaper 'for three consecutive weeks, to wit, April 13 to April 27, 1877'; that is, we construe the affidavit to mean that there were three insertions of the notice in the said newspaper, to wit, one on April 13, one on April 20, and one on April 27, 1877, and, with this construction, we think the affidavit, as thus amended, was sufficient." (p. 128.)

Again, in *Tidd v. Grimes*, 66 Kan. 401, 71 Pac. 834, it was held that a statute requiring the county treasurer, antecedent to sale of property for delinquent taxes, to cause a notice to be published "once a week for four consecutive weeks," was sufficiently complied with by four publications, one each separate and successive week, the dates of publication being August 6, August 13, August 20, and August 27, covering only twenty-two days.

It will be observed that this section under scrutiny (§ 4) also provides that "the last publication . . . (of the three consecutive weeks) shall not be more than ten days prior to the date fixed therein for the passage of such ordinance." This provision was strictly observed. The last publication was on the day preceding the passage of the ordinance. The two prior publications were made in the two preceding weeks. In view of the precedents quoted and this definite language of the statute touching the proper time for the last publication, we must hold that the notice published first on March 13 and last

on March 27, covering dates included in three separate and successive weeks, was sufficient.

5. It is next urged that the statute (Laws 1913, ch. 124) violates sections 16, 17 and 20 of article 2 of the state constitution. These objections do not call for much discussion. The act in question can not be said to cover more than one subject, which is a grant of power to certain cities to enlarge, repair, extend, and improve their waterworks systems. The details of the act are all pertinent to the main subject. We think also that the classification of the cities, those second- and third-class cities which own their waterworks and whose indebtedness does not exceed fifteen per cent of their assessed valuation, is not unreasonable nor violative of the uniformity clause of the constitution.

To raise a suspicion or presumption against the regularity of this statute's legislative history, the appellant directs our attention to senate joint resolution No. 16, which immediately follows the act in question (Laws 1913, p. 201) and which orders the insertion of an enacting clause in the act. This joint resolution does not, as contended by appellant, amend the statute. It merely voiced the determination of the legislature to amend the bill before it became a statute. The enrolled bill on file with the secretary of state shows the enacting clause duly inserted. The joint resolution was regularly adopted by a constitutional majority of each house while the bill itself (Senate Bill No. 491, Laws 1913, ch. 124) was still within legislative control, and one day before it was approved by the governor (Senate Journal, p. 789; House Journal, p. 1123). The legislature always has the right to make corrections or germane amendments to a bill until the governor has acted upon it. (36 Cyc. 951.) It may recall a bill from the governor unless he has signed it. (36 Cyc. 959.) In this case we think the legislature was needlessly formal in its procedure to perfect the bill. The joint resolution correcting the error has no more pertinency in the published book of session laws than would the roll call on the bill, or the motions and speeches directed toward it in the course of its consideration by the legislature. (36 Cyc. 951.) The objections to the act are without merit.

From the foregoing it will be seen that no prejudicial error arose in the district court in sustaining the demurrer to plaintiff's petition.

The judgment is affirmed.