No. 21,792.

J. H. ABRAHAM et al., *Appellants*, v. E. P. WEISTER et al., as the District Board of School District No. 37, in Butler County, and THE REVERT OIL COMPANY, *Appellees*.

### SYLLABUS BY THE COURT.

INJUNCTION—*Oil and Gas Lease of School Site—Injunction Brought by Taxpayers—No Cause of Action Proven.* Under section 265 of the code, before taxpayers of a school district can maintain a suit to set aside an oil and gas lease of the school site executed by the school board and énjoin the lessee from entering upon the school premises and exploiting for oil and gas, it must appear that the contract and the acts complained of may result in imposing some burdens of taxation upon the plaintiffs.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed May 11, 1918. Affirmed.

*A. C. Malloy, R. C. Davis,* both of Hutchinson, *John H. Brennan,* and *R. H. Hudson,* both of Bartlesville, Okla., for the appellants.

*John Madden, C. E. Cooper, Chester I. Long, Austin M. Cowan, James G. Martin, Fred B. Stanley, Claude C. Stanley,* and *Benjamin F. Hegler,* all of Wichita, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs, who are patrons and taxpayers of school district No. 37 in Butler county, brought suit to enjoin the school board from executing an oil and gas lease covering the school grounds and to restrain the defendants from going upon the premises and exploiting for oil and gas. A temporary restraining order was granted, but the court on a hearing refused a temporary injunction and taxed the costs of the proceedings to the plaintiffs, who bring the case here for review.

The quarter section in which the school is located belonged in 1885 to Andrew J. Owen. He and his wife executed a warranty deed to the district, conveying a tract out of the southwest corner of the quarter with the provision that the land was conveyed for the express purpose of schools, and when not used

for that purpose or when it should become necessary to change
the site the land should revert to the original owner.    Within
the past two years it has been discovered that the entire school
district lies near the center of the Butler county oil field, and
the land on all sides of the school site is being exploited for oil.

Andrew J. Owen died in 1888 and by will devised all his
property to his wife.    Afterwards, she sold the farm subject
to the rights of the school district.    There have been a number
of conveyances to other parties since.    In the fall of 1917,
John Madden, jr., procured quitclaim deeds from Sarah Ann
Owen conveying whatever rights she had in the school premises, and also procured from the present owners of the
quarter section quitclaims of any interest held by them.    Madden subsequently transferred his interests to the Revert Oil
Company, which was organized for the purpose of taking over
the school site and exploiting it for oil and gas.    Thereafter,
the Revert Oil Company made an offer to the school district for
a lease and agreed to deposit in escrow the sum of $3,500,
which was to be paid to the district in case an election carried
and the lease was executed, and also agreed to pay the district
$3,500 more out of the proceeds of the first oil produced; and
one-eighth royalty on all oil or gas thereafter produced.    This
proposition was submitted at a special election on the 20th of
December, 1917.    There was no reservation in the lease permitting the school district to make use of any portion of the
site for school purposes.    It was the usual oil and gas lease
providing for damage to growing crops.    The vice-president
and the secretary of the Revert Oil Company appeared at the
meeting at the time of the election and talked to the voters, and
left with the school board a writing purporting to be executed
on behalf of the company, agreeing that if its proposition for
a lease was accepted it would, after consulting with the board,
move the present schoolhouse forward on the school lot, and if
necessary fence off its drilling operations so that the schoolhouse might be continued to be used for school purposes "with
entire safety to the pupils" until such time as a new schoolhouse
is erected "and properly safeguarded," and stating the understanding of the company to be that there should be no interruption in the use of the schoolhouse for school purposes by
reason of drilling operations.    The election resulted in 52 votes

for and 32 votes against the proposition. The lease was executed, the first payment of $3,500 was made to the school board, the schoolhouse was moved to another part of the premises, when the suit was brought by the plaintiffs to enjoin further proceedings.

There was testimony showing that the intention is to drill an oil well on the schoolhouse site in close proximity to the schoolhouse; that for each oil well a pit 50 to 60 feet in diameter and from 4 to 6 feet deep is necessary; that the operations would occasion noise from the exhaust of an engine, the turning of bull wheels and sand wheels, the heating of bits with blowers, and the pounding of bits with sledge hammers; that the oil and gas create an unpleasant odor; and that there is some danger of fire from the wells. The testimony also shows that from 3 to 5 offset wells, and possibly more, would be drilled next to the boundary line of the school premises. There are aproximately 150 pupils of school age in the district, the school population having materially increased by reason of the large number of laboring men employed in the oil business who have brought their families into the district.

By the terms of the contract the board agrees to turn over the school site to the oil company, permit it to move the school building to one side, in order that it may use the premises to exploit for oil beneath the surface, permit the erection upon the school lot of derricks, engines, tanks or oil pits, and other appliances and machinery, with the attendant noise, confusion, unpleasant odors, and possible danger to the school children. It appears, too, from the evidence that the drilling on the school site will necessarily result in the school premises being surrounded on three sides by the drilling and operation of offset wells by other oil companies and owners of the oil rights under the adjoining lands. The plaintiff's contention is that these facts, which are not disputed, establish a probability that the conditions will result in the entire loss of the property to the district, and that in the future it will become necessary to procure another school site. On the other hand, the defendants contend that since the district has already been paid $3,500 bonus and is to receive another payment of an equal amount, besides a royalty of one-eighth of all oil that may be produced, it is conclusively established that the plaintiffs will

be relieved from the burdens of taxation, instead of having such burdens imposed upon them. Section 265 of the code of civil procedure does not authorize the plaintiffs to maintain a suit of this character merely because of the contention that the contract is one which the school board is unauthorized to make. While there are authorities which seem to go to this extent, they do not appear to depend upon a statute worded like ours. In *Herald v. Board of Education,* 65 W. Va. 765, it was held that residents and taxpayers in a school district may sustain a suit to enjoin a lease of a school lot for oil and gas as unauthorized and void and enjoin the use of the lot for such purpose. Our statute would authorize the plaintiffs to maintain this suit if it appeared that the contract or the acts complained of "may result in the creation of any public burden or the levy of any illegal tax, charge or assessment; and any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction." (Civ. Code, § 265; *Bunker v. Hutchinson,* 74 Kan. 651, 87 Pac. 884; *Gas Co. v. Railway Co.,* 74 Kan. 661, 87 Pac. 883.)

We are unable to discover from the record in what manner the carrying out of the contract may impose burdens upon the plaintiffs; and it cannot be assumed merely because the contract is illegal, or because it is alleged to be so, that it will result in imposing upon the plaintiffs such burdens.

Whether the trial court denied the application for a temporary injunction upon the ground of the plaintiffs' incapacity to sue, or because it was held that the contract is one which the board had authority to make, does not appear. Since plaintiffs have not been able to bring themselves within the provisions of the statute and cannot maintain the suit, it is unnecessary to pass upon the other questions.

The judgment is affirmed.