No. 22,428.

JAMES S. PATRICK, *Appellant*, v. THE BOARD OF COUNTY COM-
MISSIONERS OF THE COUNTY OF HASKELL et al., *Appellees*.

### SYLLABUS BY THE COURT.

1. INJUNCTION—*Restraining Removal of County Seat—Taxpayer Proper
   Party Plaintiff.* A taxpayer may maintain an action, under section
   265 of the code of civil procedure, to enjoin the removal of a county
   seat, where that removal is attempted to be made in obedience to an
   election held under an unconstitutional law, and would result in the
   levy of a tax to provide county buildings and to pay the expense of
   such removal.

2. SAME—*Necessary Allegations and Proof.* To maintain an action
   under section 265 of the code of civil procedure, it is not necessary for
   the plaintiff to allege or prove that he has no other adequate remedy,
   or that his injury would be irreparable; it is sufficient to allege and
   prove the facts which the statute sets forth.

3. SAME—*Proceedings Not Prematurely Brought.* Where a county-seat
   election has been called, and the circumstances are such that, after the
   result of the election has been ascertained, the county seat may be
   moved before any injunction can be served, an action to prevent the
   removal of the county seat may be commenced, and a temporary in-
   junction may be served, before the election is held.

4. CONSTITUTIONAL LAW—*Election—Relocation of County Seat—Special
   Law—Act Unconstitutional.* That part of chapter 161 of the Laws of
   1919 which reads, "provided, in counties having a population of less
   than two thousand and having a county seat not located on any rail-
   road, and where at an election for that purpose the vote heretofore
   cast in favor of the removal of the county seat was more than a ma-
   jority of the votes cast, then in that event another election may be
   called at any time within two years after the date of such former
   election, and it shall only require a vote of a majority of the legal
   electors voting at such election to relocate the county seat and remove
   it from such place, and the board of county commissioners shall upon
   the petition of three-fifths of the legal electors of such county order
   an election for the relocation of such county seat," is unconstitutional,
   for the reason that it violates section 17 of article 2 of the constitu-
   tion; it is a special law where a general law can be made applicable.

5. SAME—*Special Laws—Duty of Courts.* It is the duty of the courts to
   uphold a statute rather than to declare it unconstitutional; but if it
   is repugnant to the constitution, it is the duty of the courts to declare
   the statute invalid, and if a special act has been passed where a gen-
   eral law can be made applicable, the courts must so declare.

6. SAME—*Relocation of County Seat—Construction of Statute—Special
   Law.* Where the language of an act, providing for an election for the

removal of a county seat, shows that the legislature intended that the act should apply to but one county, and the act is thereby rendered unconstitutional, that language will not be changed by construction so as to make it apply to other counties, and thus remove its invalidity.

Appeal from Haskell district court; CHARLES E. VANCE, judge. Opinion filed June 18, 1919. Reversed.

*Clad Hamilton,* and *Clay Hamilton,* both of Topeka, for the appellant.

*C. G. Dennis,* county attorney, and *William Easton Hutchison,* of Garden City, for the appellees; *C. R. Hope,* of Garden City, of counsel.

The opinion of the court was delivered by

MARSHALL, J.: On May 2, 1919, the plaintiff commenced this action to enjoin the defendants from moving the county seat of Haskell county after an election to be held on May 15, 1919. The election was called under chapter 161 of the Laws of 1919. Judgment was rendered in favor of the defendants, and the plaintiff appeals.

1. The plaintiff's right to maintain the action is not directly challenged, but the defendants, to uphold the judgment, present questions which indirectly involve that right. The statute under which the action was brought reads, in part, as follows:

"An injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge, or assessment, or any proceeding to enforce the same, or to enjoin any public officer, board or body from entering into any contract or doing any act not authorized by law that may result in the creation of any public burden or the levy of any illegal tax, charge, or assessment; and any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction." (Civ. Code, § 265, as amended by Laws 1917, ch. 247.)

This court has declared a number of times that any person whose property may be affected may enjoin any board or body from doing any act not authorized by law, which act may result in the levy of any illegal tax on that property. (*Bunker v. Hutchinson,* 74 Kan. 651, 87 Pac. 884; *Gas Co. v. Railway Co.,* 74 Kan. 661, 87 Pac. 883; *Meistrell v. Ellis County,* 76 Kan.

319, 323, 91 Pac. 65; *Hartzler v. City of Goodland,* 97 Kan. 129, 154 Pac. 265; *Stevenson v. Shawnee County,* 98 Kan. 671, 159 Pac. 5; *Abraham v. Weister,* 103 Kan. 162, 172 Pac. 998.)

The removal of a county seat would result in the levy of a tax to provide county buildings and to pay the expense of that re- moval; therefore, the plaintiff can maintain this action.

2.   The defendants contend "that injunction cannot be maintained if there is any other adequate remedy at law," and that "the invariable rule is that the injury must be irreparable before injunction will lie." These contentions ignore section 265 of the code of civil procedure. That section gives a remedy to a taxpayer against any action, by any board or officer, that will result in the creation of any illegal tax. This court, in the cases cited, *supra,* has said that a taxpayer may maintain such an action. A statement of the allegations contained in the petition in several of these cases is set out in the opinions therein. The allegation that the plaintiff has no other adequate remedy at law, or that he will suffer irreparable injury if an injunction be not granted, is not found in either of these opinions.

Where a statute gives a right of action, it is sufficient to allege in a petition, in an action under the statute, those facts which the statute itself sets forth as the circumstances under which an action may be maintained. When those facts are alleged, a cause of action is stated. (*Rosselle v. Klein,* 42 N. Y. App. Div. 316; *Ayers et al. v. Lawrence et al.,* 59 N. Y. 192; *County of Rock Island v. Union Printing Co.,* 71 Ill. App. 636; 31 Cyc. 115; 10 Encyc. Pl. and Pr., 943.)

In *Abrahams v. School District,* 97 Kan. 325, 327, 155 Pac. 16, this court said:

"It is said that the plaintiffs had a remedy by way of contest of the election. If so, the remedy was not exclusive of that afforded the plaintiffs as taxpayers by section 265 of the civil code."

If the defendant's argument is correct, the statute does not mean what it says, for the reason that when a person alleges facts which bring him within the statute he has not stated a cause of action; he must go further and allege, and consequently prove, that he has no adequate remedy at law, and that he will suffer irreparable injury. To give effect to the statute, litigants must be permitted to prosecute actions under

it, even if they have another adequate remedy, and even if they do not sustain irreparable injury.

The defendants cite, among other cases, *Laithe v. McDonald,* 12 Kan. 340, where this court said:

"It is a general rule of equity, with some exceptions, however, that courts of equity will not grant relief where the party has a plain and adequate remedy at law." (p. 348.)

An action under section 265 of the code of civil procedure is one under the exceptions mentioned in *Laithe v. McDonald.*

In criminal pleading, where the statute creates an offense and sets out the facts which constitute it, an information that follows the language of the statute is good. (*The State v. Buis,* 83 Kan. 273, 111 Pac. 189.) The same rule of pleading should, and does, apply in civil actions.

3. The present action was tried, the judgment was rendered, the appeal was taken, and a stay order was granted, before the election was held. The defendants contend that the contingency on which an injunction might be granted did not occur until after the election. Stated in other words, the defendants contend that the action was prematurely brought. The petition undertook to allege facts justifying the bringing of the action before the election. The election was called for Thursday, May 15; the board of canvassers would meet on Saturday, May 17; and the result would probably be declared on that day. If the defendants had been as deeply interested, and would have acted as promptly as interested parties have acted in the past in county-seat contests, the county seat would have been moved before any kind of an injunction could have been served, and the liability of the county for county buildings and for the expense of moving might have become fixed. A more difficult question would then have been presented for solution, and the plaintiff's rights might have been defeated. Under the circumstances, this court will not say that the contingency giving the plaintiff the right to an injunction had not occurred, and will not say that the action was prematurely brought. These are not questions of fact which were determined by the trial court in favor of the defendants, but are questions of law which this court will review.

4. The plaintiff attacks the validity of the law under which

the election was called.    (Laws 1919, ch. 161.)    The title of
the act reads:

"AN ACT to amend section 2897 of the General Statutes of 1915 and
to repeal said original section."

The section amended provided for county-seat elections, and
prescribed restrictions thereon.    The amendment to the sec-
tion is contained in a proviso, which reads:

"Provided, in counties having a population of less than two thou-
sand and having a county seat not located on any railroad, and where
at an election for that purpose the vote heretofore cast in favor of the
removal of the county seat was more than a majority of the votes cast,
then in that event another election may be called at any time within two
years after the date of such former election, and it shall only require a
majority of the legal electors voting at such election to relocate the
county seat and remove it from such place, and the board of county com-
missioners shall upon the petition of three-fifths of the legal electors
of such county order an election for the relocation of such county seat."

The plaintiff argues that the amendment violates section 17
of article 2 of the state constitution.    That section reads:

"All laws of a general nature shall have a uniform operation through-
out the state; and in all cases where a general law can be made ap-
plicable, no special law shall be enacted; and whether or not a law en-
acted is repugnant to this provision of the constitution, shall be con-
strued and determined by the courts of the state."

Prior to 1906 that section read:

"All laws of a general nature shall have a uniform operation through-
out the state; and in all cases where a general law can be made ap-
plicable, no special law shall be enacted."    (Gen. Stat. 1901, § 135.)

In *Anderson v. Cloud County,* 77 Kan. 721, 731, 95 Pac. 583,
this court said:

"It has been estimated that fully one-half of the laws enacted by the
state legislatures in recent years have been special laws.    Since 1859
the rapid growth of cities and towns has produced so many changes in
social and economic conditions, and added so much to the complex ne-
cessities of local communities, that the demand upon legislatures for
this species of class legislation has increased, and the evil effects have
multiplied.    The legislature of 1905, which differed in this respect but
little from its predecessors, passed no less than twenty-five special acts
relating to bridges, and thirty-five fixing the fees of officers in various
counties and cities.    Out of a total of 527 chapters, more than half are
special acts.    This does not include appropriation laws, which from their
nature are inherently special.    The first act passed by this legislature
declared a certain young woman the adopted child and heir at law of

certain persons. Others changed the names of individuals. Many granted valuable rights and privileges to private corporations. Hundreds granted special favors to municipal corporations, and many others conferred special privileges upon individuals. Such were the conditions which induced the people at the general election in 1906 to change the constitution by adopting the amendment to section 17 of article 2."

The amendment to the constitution has checked the abuse, but has not stopped it.

It becomes necessary to determine whether or not this amendment to the general statute is a special act. There are rules for determining that question. The most of them have been declared in cases in which it was argued that section 1 of article 12 of the constitution had been violated.

The rules that are applicable in determining the validity of an act under section 1 of article 12 of the constitution should be applied in determining whether an act is general or special under section 17 of article 2. The former reads:

"The legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

In *City of Topeka v. Gillett,* 32 Kan. 431, 436, 4 Pac. 800, this court said:

"We now come to the more particular consideration of the act in controversy. Is it general, or is it special? It excludes from the scope and operation of its provisions all private corporations; all public corporations except cities; all cities of the first class; all cities of the third class; all cities of the second class except such as have a population of 6,000 and over; all cities not obtaining the benefit of the act within fifty-eight days after its passage; all cities not giving notice under the act, within fourteen days after its passage or within ten days after its taking effect; and, indeed, excluding all corporations of the state of Kansas, except three cities, to wit, Topeka, Lawrence, and Atchison; and it gives to these three cities only fourteen days after its passage within which to commence action under it, and only fifty-eight days after its passage within which to complete such action; and at the expiration of that time the law ceases to have operation and becomes ineffectual and defunct. At the time when this act was passed, there were just ten cities of the second class in the state of Kansas; and this act excluded from its operation all these cities except the three cities above named—Topeka, Lawrence, and Atchison."

A statute granting corporate power that can apply only to a fixed number of corporations, and cannot possibly at any time apply to any other corporation, is ordinarily regarded as

special.   (*Cole v. Dorr,* 80 Kan. 251, 259, 101 Pac. 1016; *Bull v. Kelley,* 83 Kan. 597, 602, 112 Pac. 133; *The State, ex rel., v. City of Lawrence,* 101 Kan. 225, 227, 165 Pac. 826.)

The mere fact that a statute is general in form will not save it if its operation and effect are necessarily local and special. (*The State, ex rel., v. Kansas City,* 50 Kan. 508, 516, 31 Pac. 1100.)

Another proposition must be disposed of before the statute can be declared unconstitutional.  That proposition is, could a general county-seat election law have been made applicable to Haskell county?  Prior to the amendment by the act of 1919, a general law was applicable to that county, and no reason has been advanced to show that such a law cannot now be made applicable.  The location of county seats has always been a matter of general and vital interest in this state.  The subject is one that should be controlled by general legislation, and it can be so controlled.  A particular county may wish that the general law were different, so as to enable that county to change or retain the location of the county seat; but the desire of a county to have a different law does not show that a general law cannot be made to apply.

5. The defendants invoke the rule that it is the duty of the court to uphold the law if possible.  There is no question about the rule.  It has been declared by this court in a number of instances; but if an act of the legislature is repugnant to the constitution it is the duty of the courts to declare the act invalid. (*Mayberry and others v. Kelly,* 1 Kan. 116.)  The record of that duty performed will be found in many volumes of the reports of this court.  The amendment to section 17 of article 2 of the constitution imposed an additional duty on the courts. They are now commanded to determine whether a general law can be made applicable when a special law has been passed. That command must be obeyed.  While it is the duty of the courts to uphold laws passed by the legislature, yet it is just as much the duty of the courts to uphold the constitution.  If the statute now under consideration be approved, and the principle followed in declaring that approval is observed in the future, the amendment concerning special laws will be of no effect, for the reason that any school district, any township, any city, any county in the state, desiring to accomplish any-

thing not authorized by the general law, can, by the system that has been followed in framing the present act, secure the enactment of a law, general in form, but special in effect, enabling it to accomplish its purpose. Special laws, instead of being direct, will become general in form, but indirectly special, and all the evils of special legislation that brought about the amendment to section 17 of article 2 will be revived.

6. The defendants argue that the word "heretofore," in the questioned part of the act, should be read "theretofore," and thus avoid the objection that the act is special. The language used by the legislature contains many evidences of an intention to restrict the law to Haskell county. It was one of five counties that had a population of less than 2,000, and one of six counties that had a county seat not located on a railroad; but both these conditions existed in only three counties; and there was only one of these counties, Haskell, that, more than two years prior to the enactment, had a county-seat election in which more than a majority of votes cast were in favor of the removal of the county seat. These restrictions show that the legislature intended that the amendment to section 2897 of the General Statutes of 1915 should apply to Haskell county, and to that county alone. If we read the word "heretofore" as though it were written "theretofore," we must do it for the purpose of construing the act as general, and make it apply to two counties to which the legislature intended that it should not apply. Even if the change were made, it is not clear that the objection to the validity of the act would be avoided.

It follows that the amendment is unconstitutional; that the election was illegally called and held; that the county seat should not be moved under that election; and that the injunction should have been granted by the trial court.

The judgment is reversed, and the injunction is granted.