No. 36,865

ORAL A. DUNN et al., *Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MORTON et al., *Appellants.*

(177 P. 2d 207)

Opinion filed February 7, 1947.

*Shelley Graybill,* county attorney, argued the cause, and *Oscar F. Perkins,* of Elkhart, was with him on the briefs for the appellants.

*Charles Vance,* of Liberal, and *L. L. Morgan,* of Hugoton, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action brought by the plaintiffs against the Board of County Commissioners of Morton county and others, as more fully set forth later, to enjoin an election called for January 20, 1947, to relocate the county seat. The board of county commissioners and certain of the defendants demurred to the petition and also to an application for a restraining order and temporary injunction. A trial was had in the district court at which the demurrer was overruled and a temporary injunction was granted. From these rulings an appeal was perfected to this court. The appeal was heard on January 18, 1947, and was decided the same day. At that time a short opinion was prepared and filed (*ante,* p. 254) in which it was stated that later a fuller opinion would be prepared and filed.

In view of our conclusions hereafter stated, it is not necessary that we make an analysis of all the allegations of the petition. It is first noted that in the caption to the petition the defendants are named as the board of county commissioners of Morton county, and "E. M. Dean, John M. Hardwick, B. B. Rickart and Delmas Littell, individually and as County Commissioners of the County of Morton." In the petition it is alleged that Morton county has a population of more than two thousand people, and that the county seat has been located at Richfield for more than eight years consecutively, and that there have been erected at the county seat for county purposes buildings costing more than ten thousand dollars; that the plaintiffs are residents, electors and taxpayers of the county and bring the action on their own behalf and on behalf of other residents, electors and taxpayers; that defendants Hardwick and Dean are duly *elected,* qualified and acting county commissioners for the second and third commissioner districts and that defendant Littell is the duly *appointed,* qualified and acting commissioner of the first commissioner district; that in December, 1946, petitions were presented to the board of county commissioners to call an election to remove the county seat to Elkhart, and various claimed defects in the petition are set forth; that the defendants Dean and

Littell acting as the board of county commissioners made a finding that the petitions were insufficient, and the defendants Harwick and Rickart claiming to act as the board of county commissioners, when in fact Rickart was not in law or in fact a county commissioner, made a finding the petitions were sufficient and pursuant to such finding, made a purported order calling the election to be held January 20, 1947; that plaintiffs *believe* that Littell is the duly *appointed*, qualified and acting county commissioner, and that the order made by defendants Dean and Littell that no election be held, was the valid act of the board of county commissioners, and that plaintiffs *believe* that defendant Rickart acted without legal authority and was not *de facto* or *de jure* a county commissioner of the county and that the action of defendants Hardwick and Rickart in purporting to call the election was not the act of the board of county commissioners, but if such purported order was the official act of the board of county commissioners of Morton county, the order was made without authority of law and in violation of G. S. 1935, ch. 19, art. 16. Then follow allegations that the election was called notwithstanding the insufficiency of the petitions presented to the board of county commissioners, with lengthy allegations pertaining to lack of qualification of signers of the petitions and the sufficiency of the petitions, and other allegations that the election was not properly called under the provisions of G. S. 1935, 19-1613 to 19-1619, and that the list of qualified electors was not properly made as required by those sections of the statutes. A further allegation is that if not restrained the defendants will hold a purported election at the expense of the county, will attempt to canvass the returns and attempt to move the county records pursuant to such canvass, all of which will cause expense to the county and cause irreparable damage to the plaintiffs and to other taxpayers, citizens and electors of Morton county. Other allegations are not of present importance. The prayer was for a restraining order, for a temporary injunction and on final hearing for a permanent injunction enjoining the holding of the election.

As has been noted the defendants' demurrer to the petition was overruled and a temporary injunction granted, and the appeal followed.

The only question necessary to be decided is whether the petition stated facts showing that plaintiffs could maintain the action. Although developed later two propositions suggest themselves, one

being the right of plaintiffs to question the official composition of the board of county commissioners, and the other the right of plaintiffs to enjoin an election.

It has been noted that in the caption of their petition, plaintiffs denominate defendants Dean, Hardwick, Rickart and Littell as county commissioners. That there are only three members of the board of county commissioners need not be demonstrated. (See Kan. Const. art. 4, § 2; G. S. 1935, 19-202.) The allegations of the petition need not be repeated, but in essence, it is charged that Hardwick and Dean are commissioners, and that Littell is a duly *appointed* commissioner, and that Rickart is acting as a commissioner, and it is contended that he is not a commissioner either *de facto* or *de jure,* and as a preliminary to the power of the board of county commissioners to act, plaintiffs attempt to question the official composition of the board. In support of their right to do so, they direct our attention to the provisions of G. S. 1935, 60-1121, as construed in *Patrick v. Haskell County,* 105 Kan. 153, 181 Pac. 611. In that case it was held that a taxpayer could maintain an action under the above provision of the civil code of procedure to enjoin the removal of a county seat where that removal was attempted to be made in obedience to an election held under an unconstitutional law and would result in the levy of a tax to provide county buildings and pay the expenses of the removal of the county seat. We shall not discuss the case at length but shall merely point out that in the instant case there is no claim of unconstitutionality of the statute under which the election is to be had. In that case the action was not one to question the official composition of the board of county commissioners, nor to enjoin an election. We here note that there was a second appeal in the above matter, our opinion being reported in *Patrick v. Haskell County,* 108 Kan. 141, 193 Pac. 1061, and it was there held:

"The acts of one who is county commissioner *de jure* or *de facto* are binding on all the people of the county, and his authority to act as a *de facto* officer cannot be questioned by anyone except the state." (Syl. ¶ 3.)

Because of the reference to the Patrick case we here note that the question of the right of a private party to question the legality of the organization of a school district was considered in *Oil & Gas Co. v. Board of Education,* 112 Kan. 737, 212 Pac. 900, where it was said:

"Plaintiffs place much reliance upon the ruling in *Patrick v. Haskell*

*County,* 105 Kan. 153, 181 Pac. 611, but there the right of the plaintiff to maintain the action was not directly challenged. · * * * A taxpayer may avail himself of the injunction remedy to question the right to levy or enforce a tax because it is unequal or is excessive or that the levy was for an unauthorized purpose or because of irregularities in making the levy or assessment, but he cannot use it to test the existence of a municipality either *de jure* or *de facto,* which is functioning as a corporate entity under a valid law." (1. c. 741.)

The rule that a private person by virtue of being a citizen and taxpayer may not maintain an action to question the official capacity of a public officer or board, or the existence of a municipality, or the official composition of a public body, or to compel performance of a public duty, has been before this court in many cases. To attempt to cite all of these cases would unduly extend this opinion. In the early case of *Nixon v. School District,* 32 Kan. 510, 4 Pac. 1017, it was held:

"A private person cannot, by virtue of being a citizen and tax-payer, maintain an action against a school district or its officers where the act complained of affects merely the interests of the public in general, and not those of such private person in particular." (Syl.)

The second edition of our reports shows the following cases noted as an annotation to the above syllabus: *McMillen v. Butler,* 15 Kan. 62; *State, ex rel., v. McLaughlin,* 15 Kan. 228; *Spencer v. Joint School District No. 6,* 15 Kan. 259; *State v. Comm'rs of Marion Co.,* 21 Kan. 419; *Reedy v. Eagle,* 23 Kan. 254; *Adkins v. Doolen,* 23 Kan. 659; *Crans v. Francis,* 24 Kan. 750; *C. B. U. Rld. v. Andrews,* 30 Kan. 590, 2 Pac. 677; *State, ex rel., v. Smith,* 31 Kan. 129, 1 Pac. 251; *A. T. & S. F. Rld. Co. v. Wilson, Treas.,* 33 Kan. 223, 6 Pac. 281. Later cases expounding the rule in its various applications are *Clark v. Comm'rs of Montgomery Co.,* 34 Kan. 632, 9 Pac. 756; *Mining and Gas Co. v. Gas and Mining Co.,* 55 Kan. 173, 40 Pac. 326; *Chase v. Board of Directors,* 55 Kan. 320, 40 Pac. 665; *Gormley v. School Board,* 110 Kan. 600, 204 Pac. 741; *Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651; *Elting v. Clouston,* 114 Kan. 85, 217 Pac. 295; *School District No. 38 v. Rural High School District,* 116 Kan. 40, 225 Pac. 732; *Euler v. Rossville Drainage District,* 118 Kan. 363, 235 Pac. 95; *Lyon County Comm'rs v. Bernheisel,* 123 Kan. 204, 254 Pac. 371; *Fortune v. .Hooven,* 133 Kan. 638, 2 P. 2d 142; *Citizens Utilities Co. v. City of Goodland,* 146 Kan. 172, 69 P. 2d 318; *Kern v. Newton City Commissioners,* 147 Kan. 471, 77 P. 2d 954; *School District v.*

*Shawnee County Comm'rs,* 153 Kan. 281, 110 P. 2d 744; and see the various cases cited in the above.

In many of the above cases may be found discussions of exceptions to the rule, such as personal interest specific and peculiar to the plaintiff and not one shared with the community generally. In the petition in the case at bar no attempt is made to show any such specific interest, but to the contrary it is a class suit that so far as the pleading discloses, shows that each resident taxpayer and elector of the county is in the same position as every other one. We ·need not discuss any exception.

Turning now to the question of ·the right of the plaintiffs to enjoin the election, we direct attention to *State, ex rel., v. Comm'rs of Wabaunsee Co.,* 36 Kan. 180, 12 Pac. 942, where an action was commenced in the name of the state on the relation of Pierce, a resident, taxpayer and elector of a township against the board of county commissioners and the county clerk to enjoin their canvassing the returns of an election to authorize issuance of certain bonds. The court considered the right of the plaintiff to maintain the action and held that the relator had no interest in the subject matter of the bonds different in kind from that of the public generally and that he could not maintain the action although he might be a resident, a taxpayer and an elector.

In *Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 235, Ann Cas. 1912A 719, plaintiff, an individual, sought to enjoin an election in a city of the second class. In the opinion it is stated "that this court has never enjoined the calling or holding of an election, and· we believe that this is the first instance where it has been asked to do so." (l. c. 433.) A review of authorities from other jurisdictions is made which will not be repeated. It was held:

"It is a principle of general application that courts will not enjoin the calling and holding of an election.

"Injunction being an extraordinary remedy, will not be granted unless it be made to appear to the satisfaction of a court of equity that some substantial and positive injury will occur; acts which, though irregular and unauthorized, can have no injurious result, constitute no ground for the relief." (Syl. ¶¶ 1, 2.)

In *Bealmear v. Hildebrand,* 107 Kan. 419, 191 Pac. 263, taxpayers sought to enjoin an election to choose officers of a rural high school district. In the opinion it was stated:

"In calling the election to choose a district board, the defendant acts in a

purely ministerial capacity to execute the command of the legislature. The proposition is that the plaintiffs may litigate with her [county superintendent] the legal existence of the corporation. This court has uniformly held, under a great variety of circumstances, that this may not be done." (citing cases.) (l. c. 421.)

The court held:

"Private persons have no standing to question the legality of the organization of a rural high-school district, by an action to enjoin election of rural high-school district officers." (Syl.)

We conclude from the authorities above referred to that plain-tiffs as individuals and as citizens, taxpayers and electors, had no right to maintain an action the purpose of which was to question the legal status or the official composition of the board of county commisioners of Morton county, nor did they state any facts which warranted the relief sought and the election for relocation of the county seat enjoined, and that the district court erred in overruling the demurrer to the petition and in granting the temporary injunction. Its ruling and judgment is reversed and the cause is remanded with instructions to sustain the demurrer and to vacate and set aside the temporary injunction. It is so ordered.